SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

## Robert Lavezzi v. State of New Jersey (A-29-13) (072856)

**Argued March 31, 2014 -- Decided September 9, 2014**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court considers whether the State is obligated to defend and indemnify employees of a county prosecutor's office involved in a civil action arising from the loss of, and damage to, non-contraband items seized in the course of a criminal investigation.

The Essex County Prosecutor's Office (Prosecutor's Office) executed a search warrant issued in connection with a criminal investigation and seized items owned by plaintiffs Robert and Karen Lavezzi. The criminal investigation was eventually abandoned and the State did not institute either criminal charges or a civil-forfeiture action against plaintiffs. Plaintiffs claim that their property was lost and damaged while in the custody of the Prosecutor's Office. They filed a complaint alleging that the Prosecutor's Office and three of its employees were liable to them on theories of negligence, conversion, and unlawful taking. Defendants requested that the Attorney General's Office (Attorney General) defend and indemnify the action pursuant to N.J.S.A. 59:10-1 and N.J.S.A. 59:10A-1 of the New Jersey Tort Claims Act (TCA), and Wright v. State, 169 N.J. 422 (2001), under which the employees of a county prosecutor's office are entitled to defense and indemnification from the Attorney General when they are sued on the basis of actions taken in the discharge of their law enforcement duties. The Attorney General denied defendants' requests, finding that the Prosecutor's Office's processing and safeguarding of plaintiffs' property were administrative acts not falling within the purview of Wright. The County appealed and the Appellate Division affirmed, finding that the retention of plaintiffs' property "long after any related law enforcement activity" had concluded constituted an administrative function that did not implicate the Attorney General's obligation to defend and indemnify State employees. This Court granted certification. 216 N.J. 14 (2013).

**HELD**: Pursuant to the Wright standard, the State is obligated to defend and indemnify the Prosecutor's Office employees at this early stage of the litigation because, based on the limited record before the Court, this case arises from the performance of their law enforcement duties.

1. A reviewing court "should not reverse the Attorney General's determination unless it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Prado v. State, 186 N.J. 413, 427 (2006). An appellate court defers to an administrative agency's findings of fact, but reviews its legal conclusions de novo. Norfolk S. Ry. Co. v. Intermodal Props., LLC, 215 N.J. 142, 165 (2013). (pp. 10-11)

2. Under N.J.S.A. 59:10A-1 of the TCA, which is derived from vicarious liability principles, the Attorney General must defend State employees in actions arising out of conduct performed in the scope of their employment, unless a statutory exception listed in N.J.S.A. 59:10A-2 applies. Under N.J.S.A. 59:10-1 of the TCA, if "the Attorney General provides for the defense of an employee or former employee, the State shall provide indemnification for the State employee." In this case, the Attorney General does not argue that its duty to defend and indemnify is inapplicable because the action arises out of acts committed outside the scope of defendants' employment for the Prosecutor's Office, or because a statutory exception applies. Instead, the Attorney General asserts that it is not required to defend and indemnify defendants because, in performing the functions at issue in this case, they were not acting as "state employees" for purposes of N.J.S.A. 59:10-1 and N.J.S.A. 59:10A-1. (pp. 11-14)

3. The Criminal Justice Act of 1970 provides that "[t]he criminal business of the State shall be prosecuted by the Attorney General and the county prosecutors." N.J.S.A. 2A:158-4. Moreover, the Attorney General is authorized to supersede a "county prosecutor for the purpose of prosecuting all of the criminal business of the State in said county," and to appear on the State's behalf "in any court or tribunal" in a criminal investigation or proceeding "as shall be necessary for the protection of the rights and interests of the State." N.J.S.A. 52:17B-106. This Court has

1

long recognized that employees of a county prosecutor's office "possess a hybrid status." Dunne v. Fireman's Fund Am. Ins. Co., 69 N.J. 244, 248 (1976). When "county prosecutors execute their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime, they act as agents of the State. On the other hand, when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions," they act on behalf of the county. Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996), cert. denied, 519 U.S. 1084 (1997). (pp. 15-16)

4. In Wright, the Court held that "[b]ecause law enforcement is a basic State function, and because county prosecutors are uniquely subject at all times to the Attorney General's statutory power to supervise and supersede them," the TCA imposes "vicarious liability on the State for the tortious actions of county prosecutorial employees in the performance of their law enforcement duties." 169 N.J. at 429-30. A county prosecutor's employees, however, are not State agents for purposes of defense and indemnification in cases arises out of their administrative functions. In Coleman, for example, the Third Circuit concluded that because a county prosecutor acts as "a local, county official" when making personnel decisions, the prosecutor and his employees were not entitled to State defense and indemnification in an action arising from allegedly discriminatory promotion decisions. 87 F.3d at 1506. Similarly, in Courier News v. Hunterdon County Prosecutor's Office, 378 N.J. Super. 539 (App. Div. 2005), the Appellate Division held that the State did not have to pay a counsel fee award arising from a county prosecutor's office's denial of an Open Public Records Act (OPRA) request for a copy of a 9-1-1 tape, finding that the liability arose from the county prosecutor's office's administrative decision under OPRA. Id. at 542-53, 546-47. Thus, although the State is required to assume the burden of defense and indemnification for liability arising from a county prosecutor's law enforcement functions, liability derived from a county prosecutor's administrative functions is the county's responsibility. The test is whether the act or omission of the county prosecutor's office and its employees that gave rise to the potential liability derived from the prosecutor's power to enforce the criminal law, and constituted an exercise of that power. (pp. 16-21)

5. Turning to this case, plaintiffs' items were seized by the Prosecutor's Office when it executed a search warrant during a criminal investigation. To the extent that plaintiffs' items were lost or damaged when seized, the liability at issue was clearly incurred during a law enforcement activity and therefore triggers the State's defense and indemnification obligations. After being seized, plaintiffs' items were allegedly stored by the Prosecutor's Office at a location and under conditions that are not disclosed by the record. The retention of evidence during a criminal investigation, like the seizure of that evidence, is a law enforcement activity that gives rise to the State's obligation to defend and indemnify a county prosecutor. The damage and loss alleged by plaintiffs may have occurred following the conclusion of the criminal investigation, when the non-contraband items at issue were no longer potential evidence, but had not been returned to plaintiffs. If so, the continued retention of plaintiffs' property, either intentionally or by oversight, derives from and directly relates to the law enforcement function that the Prosecutor's Office fulfilled when it seized and retained the evidence, and thus also implicates the State's duty to defend and indemnify. Therefore, the State is obligated to defend and indemnify defendants pursuant to Wright and N.J.S.A. 59:10-1 and N.J.S.A. 59:10A-1 of the TCA, and the Attorney General's administrative decision holding otherwise was "arbitrary, capricious or unreasonable." (pp. 21-23).

6. If a more complete record at a later stage of this case reveals that plaintiffs' property was stored in a facility at the direction of the County, and that the loss or damage to plaintiffs' property resulted from the condition or maintenance of that facility, the State may pursue a claim against the County for reimbursement of all or part of its costs incurred in the defense and indemnification of the Prosecutor's Office employees. (pp. 23-24)

The judgment of the Appellate Division is **REVERSED**, and the case is **REMANDED** to the trial court for further proceedings in accordance with this opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and FERNANDEZ-VINA; and JUDGES CUFF and RODRÍGUEZ (both temporarily assigned) join in JUSTICE PATTERSON's opinion.**

ROBERT LAVEZZI and KAREN
LAVEZZI,

    Plaintiffs,

       v.

STATE OF NEW JERSEY,

    Defendant-Respondent,

       and

CAROLYN A. MURRAY, ACTING
PROSECUTOR OF ESSEX COUNTY;
ESSEX COUNTY PROSECUTOR'S
OFFICE; PATRICK TODD,
INVESTIGATOR FOR THE ESSEX
COUNTY PROSECUTOR'S OFFICE
AND INDIVIDUALLY; JAMES
CONTRERAS, INVESTIGATOR FOR
THE ESSEX COUNTY PROSECUTOR'S
OFFICE AND INDIVIDUALLY,

    Defendants,

       and

ESSEX COUNTY,

    Defendant-Appellant.

       Argued March 31, 2014 – Decided September 9, 2014

       On certification to the Superior Court,
       Appellate Division.

       Alan R. Ruddy, Assistant County Counsel,
       argued the cause for appellant (James R.
       Paganelli, Essex County Counsel, attorney).

1

Lisa A. Puglisi, Assistant Attorney General, argued the cause for respondent (John J. Hoffman, Acting Attorney General of New Jersey, attorney; Brian P. Wilson, Deputy Attorney General, on the letter brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In this case, the Court determines whether the State is obligated to defend and indemnify employees of a county prosecutor's office involved in a civil action arising from the loss of, and damage to, non-contraband items seized in the course of a criminal investigation.

The items at the center of this case were the property of plaintiffs Robert and Karen Lavezzi. They were seized from plaintiffs' home after the Essex County Prosecutor's Office (Prosecutor's Office) executed a search warrant issued in connection with an investigation of plaintiff Robert Lavezzi. That investigation was eventually abandoned. The State did not institute either criminal charges or a civil-forfeiture action against either plaintiff.

Plaintiffs claim that, while their property was in the custody of the Prosecutor's Office, some of it was damaged and some was lost entirely. They filed a complaint in the Law Division, alleging that the Prosecutor's Office and three of its employees were liable to them on theories of negligence, conversion, and unlawful taking. Essex County (County) requested that the Attorney General's Office (Attorney General)

2

defend and indemnify defendants, pursuant to this Court's decision in Wright v. State, 169 N.J. 422 (2001). The Attorney General denied the County's request for defense and indemnification, and the Appellate Division affirmed the Attorney General's determination.

Based on the sparse record before the Court, which does not reveal the purpose of the investigation, the date upon which the investigation was terminated, or the manner in which the seized items were allegedly damaged and/or lost, we reverse the Appellate Division's determination. We apply the governing standard stated by this Court in Wright, under which the employees of a county prosecutor's office are entitled to defense and indemnification when they are "sued on the basis of actions taken in the discharge of their law enforcement duties." Id. at 456. The articles disputed in this case were seized in the course of a criminal investigation, part of the State's "criminal business" for which the State and county prosecutors are responsible pursuant to N.J.S.A. 2A:158-4. The limited record before the Court indicates that this case arises from the employees' performance of law enforcement duties, rather than administrative functions that are the exclusive responsibility of the County.

Accordingly, we hold that at this early stage of the litigation, the State shall defend and indemnify the employees

3

of the Prosecutor's Office named as defendants.  The State's defense and indemnification of the Prosecutor's Office employees shall be subject to a reservation:  if it is revealed at a later stage of this case that plaintiffs' property was stored in a facility controlled by the County and that the loss or damage to plaintiffs' property resulted from that facility's condition or maintenance, the State may seek reimbursement of all or part of the costs incurred in its defense and indemnification of the Prosecutor's Office employees.

I.

The record in this case, consisting of the complaint filed by plaintiffs and the parties' briefs, reveals the following factual background.

On or about December 29, 2005, the Prosecutor's Office executed a warrant authorizing a search of plaintiffs' home in connection with a criminal investigation of plaintiff Robert Lavezzi.  The details of this investigation are not disclosed in the record.  Plaintiffs allege that the Prosecutor's Office seized numerous items, including "collectible and model trains, train parts and other personal possessions and items belonging to [p]laintiffs."  They claim that these items were transported to facilities "owned and/or under the exercise and control of" the State, the County, former County Prosecutor Paula Dow, the

4

Prosecutor's Office and two investigators employed by the Prosecutor's Office, Patrick Todd and James Contreras.

On a date that is not specified in the record, but is alleged by plaintiffs to have been on or before April 14, 2009, the Prosecutor's Office elected not to prosecute plaintiff Robert Lavezzi. There is no indication in the record that a civil forfeiture action under N.J.S.A. 2C:64-1 to -9 was ever instituted with respect to the disputed property.

Plaintiffs allege that although the Prosecutor's Office stated that the items seized during the December 29, 2005 search would be restored to them, their repeated requests for their property were ignored, and the items were not returned. According to plaintiffs, the Prosecutor's Office met with plaintiff Robert Lavezzi on or about October 9, 2009, and January 5, 2010, and returned "some of the items and personal property" that had been seized during the search of the home. Plaintiffs assert, however, that "[a] substantial number of personal possessions and items . . . including but not limited to collectibles and model trains . . . were not returned." Plaintiffs also contend that many of the items were "damaged or crushed" and that some items sustained water damage to either the item itself or to its packaging. According to plaintiffs, the water damage occurred as a result of defendants storing them in facilities "subject to leaks or . . . located in a flood

5

zone," including a storage space provided by the County to the Prosecutor's Office.

Plaintiffs filed a complaint in the Law Division, naming as defendants the Prosecutor's Office, former County Prosecutor Dow, Investigators Todd and Contreras, and unidentified "John Doe" defendants. In their complaint, plaintiffs sought compensatory and punitive damages and attorneys' fees based on theories of negligence, gross negligence, conversion, and unlawful taking. The complaint was served upon defendants with a summons.

By letter dated November 15, 2011, the County forwarded a copy of the summons and complaint to the Attorney General. Citing Wright, the County requested "that the Attorney General's Office represent[] the Essex County Prosecutor's Office and any and all individual defendants/employees named" in the complaint. Acting Essex County Prosecutor Carolyn Murray and defendants Todd and Contreras separately wrote to the Attorney General, requesting "representation and indemnification on behalf of the Essex County Prosecutor's Office" pursuant to N.J.S.A. 59:10-1, N.J.S.A. 59:10A-1, and Wright. Each stated that plaintiffs' action had been filed against him or her in his or her "capacity as a law enforcement official in the Essex County Prosecutor's Office."

6

While defendants' requests for defense and indemnification by the State were pending, the County filed a motion to dismiss the complaint. The trial court dismissed the complaint with prejudice. However, the trial court subsequently granted plaintiffs' motion for reconsideration, modifying its order so that the motion to dismiss was denied without prejudice. As part of its order, the court permitted plaintiffs to amend the complaint to name the State as a defendant. Plaintiffs filed and served an amended complaint, asserting a claim against the State based on "principles of vicarious liability/respondeat superior" and this Court's decision in Wright.

On August 3, 2012, the Attorney General's Office issued an administrative determination responding to the requests for defense and indemnification submitted by the County and the Prosecutor's Office employees. The Attorney General declined representation, asserting that "the facts at issue . . . [did] not fall within the purview contemplated" by this Court in Wright. The Attorney General found that the Prosecutor's Office assumed "administrative responsibility to safeguard the plaintiffs' property," and that its "decision not to pursue a civil forfeiture action" against plaintiff Robert Lavezzi and its failure to return all of the items seized from plaintiffs, were "administrative acts, not law enforcement functions." Deeming the Prosecutor's Office's assumption of a custodial role

7

in the context of a criminal investigation to be "of no moment," the Attorney General's Office stated that

> [t]he State's obligation to provide defense and indemnification to county prosecutor employees arises only when the alleged tortious conduct occurs in the scope of their employment either during the arrest, investigation or prosecution of a criminal matter. The State is not . . . obligated to provide defense/indemnification to the . . . Prosecutor's Office and its employees because they reached the decision not to initiate a civil forfeiture action and chose to return plaintiffs' property, some of which was in a damaged condition. . . . Civil forfeiture does not fall within the "criminal business" of the . . . Prosecutor's Office.

The Attorney General added that "the processing of seized property is more of an administrative, rather than law-enforcement function."

The County appealed the Attorney General's administrative determination to the Appellate Division, which affirmed that decision. The Appellate Division imposed on the County the burden of proving that the Attorney General had abused his discretion, and held that the County had failed to demonstrate that plaintiffs' property was held in connection with a law enforcement activity rather than an administrative function. The panel declined to "adopt the broad principle that the storage and safeguarding of evidence is invariably an administrative function." Instead, it elected to decide the

8

case more narrowly, holding that the retention of plaintiffs' property "long after any related law enforcement activity" had concluded constituted an administrative function that did not implicate the Attorney General's obligation to defend and indemnify State employees.

We granted certification. 216 N.J. 14 (2013).

## II.

The County challenges the Attorney General's administrative determination on the ground that the claims in this matter derive from the County Prosecutor's law enforcement functions, over which the Attorney General exercises supervisory authority. The County concedes that there is no authority directly addressing the issue raised by this case. It argues, however, that case law supports the principle that the collection and retention of evidence prior to a criminal trial relates to law enforcement and is generally considered a prosecutorial function. Noting the absence of an evidentiary showing that the damaged and lost items were stored in a County facility, the County argues that this case is much more closely aligned with the Attorney General's law enforcement authority than with the County Prosecutor's administrative functions.

The State counters that the Attorney General correctly determined that when the Prosecutor's Office stored the items at issue in this case, it acted in an administrative capacity. It

9

asserts that there is an important distinction between the marshaling of evidence, which is a law enforcement function, and its storage, which is inherently administrative. The State characterizes plaintiffs' claim as being premised upon the equitable doctrine of replevin, which is grounded in civil law, and notes that plaintiffs do not challenge the manner in which the Prosecutor's Office fulfilled its law enforcement function.

### III.

We review the Attorney General's administrative determination in accordance with a deferential standard of review. An appellate court affords a "strong presumption of reasonableness" to an administrative agency's exercise of its statutorily delegated responsibilities. City of Newark v. Natural Res. Council, Dep't of Envtl. Prot., 82 N.J. 530, 539, cert. denied, 449 U.S. 983, 101 S. Ct. 400, 66 L. Ed. 2d 245 (1980). The reviewing court "should not reverse the Attorney General's determination unless it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Prado v. State, 186 N.J. 413, 427 (2006) (internal quotation marks omitted). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re J.S., 431 N.J. Super. 321,

10

329 (App. Div.) (internal quotation marks omitted), <u>certif. denied</u>, 216 <u>N.J.</u> 365 (2013).

To determine whether an agency decision "is arbitrary, capricious or unreasonable," an appellate court must determine

> "(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors."
>
> [<u>In re Stallworth</u>, 208 <u>N.J.</u> 182, 194 (2011) (quoting <u>In re Carter</u>, 191 <u>N.J.</u> 474, 482-83 (2007)).]

Although an appellate court defers to an administrative agency's findings of fact, <u>see</u> <u>Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 143 <u>N.J.</u> 22, 29 (1995), it is not "bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue," <u>Norfolk S. Ry. Co. v. Intermodal Props., LLC</u>, 215 <u>N.J.</u> 142, 165 (2013) (internal quotation marks omitted). Thus, to the extent that the Attorney General's determination constitutes a legal conclusion, we review it de novo.

The dispute in this case arises from the State's general obligation under the New Jersey Tort Claims Act (TCA), <u>N.J.S.A.</u> 59:1-1 to 12-3, subject to statutory exceptions, to defend and

11

indemnify State employees if the underlying action derives from the employee's acts or omissions in the scope of his or her employment. The TCA was enacted "to supersede the patchwork of statutory provisions providing for the defense and indemnification of state employees." Chasin v. Montclair State Univ., 159 N.J. 418, 425 (1999). The TCA provides that "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment." N.J.S.A. 59:2-2(a).

In enacting the TCA, the Legislature adopted this Court's holding in McAndrew v. Mularchuk that employer liability "follows tortious wrongdoing and . . . employers or principals, individual or corporate, are responsible for that wrongdoing when committed by agents and employees acting within the scope of the employment." 33 N.J. 172, 190 (1960); see Comment to N.J.S.A. 59:2-2. Thus, the TCA's provisions authorizing the imposition of liability upon the State for the acts and omissions of employees is derived from established principles of vicarious liability. See Wright, supra, 169 N.J. at 451.

In that setting, N.J.S.A. 59:10A-1 provides that

> the Attorney General shall, upon a request of an employee or former employee of the State, provide for the defense of any action brought against such State employee or former State employee on account of an act or omission in the scope of his employment.

Notwithstanding that general obligation, the Attorney General need not defend a State employee if one or more of the following exceptions applies:

> a. the act or omission was not within the scope of employment; or
> b. the act or the failure to act was because of actual fraud, willful misconduct or actual malice; or
> c. the defense of the action or proceeding by the Attorney General would create a conflict of interest between the State and the employee or former employee.
>
> [N.J.S.A. 59:10A-2.]

As this Court has held, "the Attorney General must provide a defense to a state employee who requests representation pursuant to N.J.S.A. 59:10A-1 unless the Attorney General determines that it is more probable than not that one of the three [statutory] exceptions . . . applies." Prado, supra, 186 N.J. at 427; see also Wright, supra, 169 N.J. at 444 (holding that "the Attorney General must defend a State employee for actions committed in the scope of employment as long as one of the . . . exceptions does not apply").

In addition to the duty to defend, the TCA imposes on the State a corresponding duty "to indemnify employees for whom a defense is provided." Chasin, supra, 159 N.J. at 426; see N.J.S.A. 59:10-1. Pursuant to the TCA, if "the Attorney General provides for the defense of an employee or former employee, the State shall provide indemnification for the State employee."

13

N.J.S.A. 59:10-1.  Indemnification for punitive or exemplary damages is permitted if, in the Attorney General's opinion, the employee's acts "upon which the damages are based did not constitute actual fraud, actual malice, willful misconduct, or an intentional wrong."  N.J.S.A. 59:10-1.[1]  Thus, the issues of whether a State employee is entitled to a legal defense, and whether he or she may be indemnified in the event that a plaintiff obtains a judgment, are closely intertwined.

In this case, the Attorney General does not dispute the County's contention that the acts and omissions by employees of the Prosecutor's Office, named by plaintiffs in their civil action, were committed within the scope of their employment. Nor does the Attorney General contend that any of the three exceptions set forth in N.J.S.A. 59:10A-2 apply.  Instead, the question of defense and indemnification turns on whether the Prosecutor's Office employees, in performing the functions at issue in this case, acted as state employees for purposes of N.J.S.A. 59:10-1 and N.J.S.A. 59:10A-1.  See Comment to N.J.S.A. 59:10-4 (stating "that the indemnity provided by the State

---

[1] In contrast to its mandate that State employees be indemnified under certain conditions, the TCA "'provides only permissive [indemnification] authority for local jurisdictions, such as counties.'"  Wright, supra, 169 N.J. at 445 (quoting Michaels v. State, 968 F. Supp. 230, 236 (D.N.J. 1997), aff'd, 150 F.3d 257 (3d Cir. 1998)).

14

should only be for and to those persons generally considered employees of the State").

Employees of county prosecutors serve State functions in the criminal justice system. The Criminal Justice Act of 1970 provides that "[t]he criminal business of the State shall be prosecuted by the Attorney General and the county prosecutors." N.J.S.A. 2A:158-4. Moreover, the Attorney General is authorized to supersede a "county prosecutor for the purpose of prosecuting all of the criminal business of the State in said county," and to appear on the State's behalf "in any court or tribunal" in a criminal investigation or proceeding "as shall be necessary for the protection of the rights and interests of the State." N.J.S.A. 52:17B-106.

As this Court has long recognized, the employees of a county prosecutor's office "possess a hybrid status." Dunne v. Fireman's Fund Am. Ins. Co., 69 N.J. 244, 248 (1976); see also Cashen v. Spann, 66 N.J. 541, 552 (finding "it appropriate to regard the defendant officials as State agents where the alleged tortious conduct arose out of the investigation of criminal activity, but . . . express[ing] no opinion on the question of whether the prosecutor or his detectives can be considered State or county employees for other purposes"), cert. denied, 423 U.S. 829, 96 S. Ct. 48, 46 L. Ed. 2d 46 (1975); Twp. of Edison v. Hyland, 156 N.J. Super. 137, 141 (App. Div. 1978) (stating that

15

"[a]lthough a prosecutor and prosecutor's detectives may be considered as agents of the State for some purposes, they are not employees of the State for certain administrative and remunerative purposes") (internal citation omitted). The Third Circuit has noted that the "dual or hybrid" role of county prosecutors in New Jersey imposes responsibilities on both the State and the county that the prosecutor serves:

> It is well established that when county prosecutors execute their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime, they act as agents of the State. On the other hand, when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator, the county prosecutor in effect acts on behalf of the county that is the situs of his or her office.
>
> [Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996), cert. denied, 519 U.S. 1084, 117 S. Ct. 754, 136 L. Ed. 2d 691 (1997).]

The dual role of a county prosecutor in criminal justice activities provided the backdrop for this Court's opinion in Wright, supra, 169 N.J. 422. There, the Court considered whether county prosecutors and their subordinates constituted state employees under the TCA for purposes of a civil action arising from the employees' alleged misconduct in the arrest and prosecution of an individual suspected of operating a drug distribution network. Id. at 429-30. The individual alleged

16

that he was wrongfully arrested and prosecuted, beaten, coerced and subjected to an unlawful search while in custody. Id. at 430-31. The Court held that when county prosecutors investigate criminal activity and enforce the law, "they are discharging a State responsibility that the Legislature has delegated to the county prosecutors" in N.J.S.A. 2A:158-4, "subject to the Attorney General's [authority] to supersede" pursuant to N.J.S.A. 52:17B-106. Id. at 451-52. It further noted that in contrast to county participation in public education, "the county prosecutor's law enforcement function is unsupervised by county government or any other agency of local government." Id. at 452. The Court held that

> [b]ecause law enforcement is a basic State function, and because county prosecutors are uniquely subject at all times to the Attorney General's statutory power to supervise and supersede them, we are persuaded that it is appropriate and consonant with legislative intent to construe the vicarious liability provisions of the TCA as imposing vicarious liability on the State for the tortious actions of county prosecutorial employees in the performance of their law enforcement duties.
>
> [Ibid.]

Accordingly, the Court ruled "that the State [could] be held vicariously liable for the tortious actions of [the] prosecutors and their subordinates performed during the investigation, arrest, and prosecution of" the plaintiff. Id.

17

at 453; see also Cashen, supra, 66 N.J. at 544, 552 (holding that county prosecutor and detectives were "agents of the State and not the county" for purposes of civil action arising from search warrant that was allegedly obtained with erroneous information).

In contrast to cases in which the potential liability clearly arose from a law enforcement activity, courts have held that a county prosecutor's employees are not State agents for purposes of defense and indemnification when the underlying action addresses the administrative functions of a county prosecutor's office. In Coleman, supra, the Third Circuit concluded that a county prosecutor is acting as "a local, county official" when he or she makes personnel decisions regarding employees of his or her office, and that the prosecutor and his subordinates were therefore not entitled to State defense and indemnification in an action arising from allegedly discriminatory promotion decisions. 87 F.3d at 1506. The court declined to hold the State responsible for defense or indemnity arising from civil litigation that did not originate from a law enforcement activity of the defendant prosecutor. Ibid.; see also DeLisa v. Cnty. of Bergen, 326 N.J. Super. 32, 35, 40-41 (App. Div. 1999) (holding that county prosecutor was not entitled to defense and indemnification in case filed by plaintiff alleging retaliatory discharge under Conscientious

18

Employee Protection Act, N.J.S.A. 34:19-1 to -8, because plaintiff's discharge "was based upon a personnel decision of the Acting County Prosecutor," and was therefore "administrative conduct"), rev'd on other grounds, 165 N.J. 140 (2000).[2]

The Appellate Division reached a similar conclusion in Courier News v. Hunterdon County Prosecutor's Office, 378 N.J. Super. 539 (App. Div. 2005). There, a newspaper's requests under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, for a copy of a 9-1-1 tape were denied by a county prosecutor's office. Id. at 542. The newspaper then filed an action in lieu of prerogative writs. Ibid. After its OPRA claim was upheld on appeal, the newspaper sought reimbursement for its counsel fees, which raised the issue of whether the State or the county would be responsible for paying any fees awarded. Id. at 542-43. The Appellate Division held that notwithstanding the fact that the disputed 9-1-1 tape related to law enforcement, the conduct by the prosecutor's office that

_____

[2] In deciding a question of immunity from claims asserted under 42 U.S.C.A. §1983 -- rather than the issue of defense and indemnification -- the United States Supreme Court also has differentiated between administrative duties that are "directly connected with the conduct of a trial," which trigger immunity, and "administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like," which do not. Van de Kamp v. Goldstein, 555 U.S. 335, 338, 344, 129 S. Ct. 855, 858, 862, 172 L. Ed. 2d 706, 711, 714-15 (2009).

19

prompted the litigation was the refusal to produce the tape, which was not a law enforcement function:

> Here, it is undisputed that the [prosecutor's office] was the custodian of the 9-1-1 tape. The [prosecutor's office] assumed administrative responsibility to safeguard this audio record the minute it took custody of it. The fact that the [prosecutor's office] assumed this custodial role in connection with a then-active criminal investigation is of no moment. Its liability to plaintiff, in the form of counsel fees, flows exclusively from the provisions of OPRA, not from its constitutional status as a law enforcement agency.
>
> [Id. at 546 (internal citation omitted).]

Consequently, the panel concluded that Wright had "nothing to do with the question before [the court]." Id. at 545. It declined to shift the burden of paying the counsel fee award to the State. Id. at 547.

Thus, both State and federal authority differentiate between liability arising from county prosecutor's law enforcement functions, for which the State is generally required to assume the burden of defense and indemnification, and liability derived from the prosecutor's administrative functions, which is deemed to be the county's responsibility. Pursuant to the limited authority that addresses this issue, the question is not whether the underlying liability has any nexus to law enforcement; a personnel or organizational decision is

20

deemed administrative even if it affects the manner in which the prosecutor's office administers its law enforcement responsibilities. Instead, the test is whether the act or omission of the county prosecutor's office and its employees that gave rise to the potential liability derived from the prosecutor's power to enforce the criminal law, and constituted an exercise of that power. See Wright, supra, 169 N.J. at 454 (focusing "on whether the function that the county prosecutors and their subordinates were performing during the alleged wrongdoing [was] a function that traditionally has been understood to be a State function and subject to State supervision in its execution").

In that setting, we consider the issue of evidence storage that gave rise to this case. The record reveals little about the property at the center of this case. It suggests, however, that plaintiffs' items were seized by the Prosecutor's Office when it executed a search warrant issued by a judge during a criminal investigation. To the extent that the items belonging to plaintiffs were lost or damaged when the Prosecutor's Office seized them pursuant to the warrant, the liability at issue was clearly incurred during a law enforcement activity, as was the liability derived from the arrest at issue in Wright. Any allegations of loss or damage incurred at the time of the items'

21

seizure implicate the defense and indemnification obligations of the State under N.J.S.A. 59:10-1 and N.J.S.A. 59:10A-1.

After being seized, plaintiffs' items were allegedly stored by the Prosecutor's Office at a location and under conditions that are not disclosed by the record. The retention of evidence during a criminal investigation, like the seizure of that evidence, is a law enforcement activity.[3] Liability deriving from such retention ordinarily will give rise to an obligation on the part of the State to defend and indemnify a county prosecutor.

In this case, the damage and loss alleged by plaintiffs may have occurred following the conclusion of the criminal investigation, when the non-contraband items at issue were no longer potential evidence, but had not been returned to plaintiffs. If so, the continued retention of plaintiffs' property, either intentionally or by oversight, derives from and

---

[3] Indeed, the Attorney General, working with the county prosecutors, has properly issued detailed guidelines for the retention of evidence, pursuant to the authority granted by the Criminal Justice Act, N.J.S.A. 52:17B-97 to -117. The current version of the Attorney General's guidelines does not instruct county prosecutors on the steps that should be taken to avoid loss or damage to non-contraband evidence retained for a criminal investigation, or to return such evidence when an investigation is concluded with no charges filed and no civil forfeiture action contemplated. Additional guidelines addressing these issues, however, would be an appropriate exercise of the Attorney General's authority under the Criminal Justice Act and could minimize the risk of liability such as that which may be incurred in this case.

directly relates to the law enforcement function that the Prosecutor's Office fulfilled when it seized and retained the evidence.[4]  Notwithstanding the State's argument that plaintiffs could have pursued a remedy based upon the equitable doctrine of replevin, the claim in this case originated from an activity that was part of the Prosecutor's Office's performance of "the criminal business of the State."  N.J.S.A. 52:17B-106.

Accordingly, we hold that the County has met its burden demonstrating that the Attorney General's administrative determination was "arbitrary, capricious or unreasonable."  In re J.S., supra, 431 N.J. Super. at 329 (internal quotation marks omitted).  At this preliminary stage of plaintiffs' action, the State is obligated to defend and indemnify defendant employees pursuant to N.J.S.A. 59:10-1 and N.J.S.A. 59:10A-1 of the TCA, and in accordance with the standard in Wright, supra, 169 N.J. at 455-56.

However, if a more complete record at a later stage of this case reveals that plaintiffs' property was stored in a facility at the direction of the County, and that the loss or damage to plaintiffs' property resulted from the condition or maintenance

---

[4] The fact that plaintiffs' claims are premised on the County Prosecutor's continued retention of seized items distinguishes this case from Courier News, supra, 378 N.J. Super. 539.  There, the act by the county prosecutor's office that gave rise to the liability was not a decision made in the context of a criminal investigation, but the denial of an OPRA request in a separate proceeding.  Id. at 542.

of that facility, the State may pursue a claim against the County for reimbursement of all or part of its costs incurred in the defense and indemnification of the Prosecutor's Office employees.

IV.

The judgment of the Appellate Division is reversed, and the case is remanded to the trial court for further proceedings in accordance with this opinion.

CHIEF JUSTICE RABNER, and JUSTICES LaVECCHIA, ALBIN, and FERNANDEZ-VINA, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE PATTERSON's opinion.

SUPREME COURT OF NEW JERSEY

NO. __A-29__                    SEPTEMBER TERM 2013

ON CERTIFICATION TO ____Appellate Division, Superior Court____

ROBERT LAVEZZI and KAREN
LAVEZZI,

     Plaintiffs,

        v.

STATE OF NEW JERSEY,

     Defendant-Respondent,

       and

CAROLYN A. MURRAY, ACTING
PROSECUTOR OF ESSEX COUNTY;
et al.,
     Defendants,

       and

ESSEX COUNTY,

     Defendant-Appellant.

DECIDED ____September 9, 2014____
       Chief Justice Rabner      PRESIDING

OPINION BY ____Justice Patterson____

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |

1