**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1518-18T1

LANCE BROWN,

     Complainant-Appellant,

v.

RUTGERS, THE STATE
UNIVERSITY OF NEW JERSEY,[1]

     Respondent-Respondent.

_____

Submitted September 16, 2020 – Decided October 2, 2020

Before Judges Rose and Firko.

On appeal from the New Jersey Division on Civil Rights, Docket No. EM14RE-65825.

Lance Brown, appellant pro se.

Backes & Hill, LLP, attorneys for respondent Rutgers, The State University of New Jersey (Christine M. Pickel, on the brief).

_____

[1] Improperly pled as New Jersey Rutgers University, University Correctional Health Care.

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Division on Civil Rights (Farng-Yi D. Foo, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Lance Brown appeals a final agency determination of the New Jersey Division on Civil Rights (Division) finding no probable cause supporting his claim that Rutgers, The State University of New Jersey, engaged in racial discrimination in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. We affirm.

Brown is a licensed psychologist with master's degrees in two disciplines of psychology and a Ph.D. in counseling psychology. In 2009, Brown was hired as a forensic mental health clinician by the University of Medicine and Dentistry of New Jersey, which operated the University of Behavioral Health Care (UBHC). Brown was assigned to the Bayside State Prison as a part of UBHC's University Correctional Health Care (UCHC) unit. UCHC professionals are responsible for providing mental health, physical health, and sex offender specific treatment services for residents, inmates, and parolees of the New Jersey Department of Corrections, Juvenile Justice Commission, and the State Parole Board. In 2011, Brown was promoted to mental health clinician supervisor of the UCHC unit.

2

In 2013, Rutgers assumed operations of the UBHC. Brown took an approved medical leave of absence from April 26, 2015 to November 23, 2015. When he returned to work, Brown requested and received a disability accommodation, which included a temporary transfer to a position in a prison located closer to his home. Brown informed Dr. Jeffrey Dickert, UCHC's Chief Operating Officer, that he was interested in pursuing non-corrections positions with UBHC. Because he was only responsible for UCHC positions, Dr. Dickert informed Brown he would share Brown's resume with Dr. Rose Marie Rosati, Dr. Dickert's counterpart at UBHC. Dr. Dickert also suggested that Brown apply for any open UCHC positions via the online application system.

Vacant positions are typically posted on Rutgers's website for a minimum of five business days; applications must be made online. Accordingly, the reviewing staff is not provided with information about an applicant's demographics, including race.[2] Thereafter, a list of qualified candidates is forwarded to the Office of Employment Equity, which "ensures equal opportunity and affirmative action in employment."

---

[2] Because Brown's resume included his affiliation with the National Association of Black Psychologists, the Division expressly declined to "conclude that hiring managers were unaware of [Brown]'s race in selecting applicants for interviews."

Between November 2015 and January 12, 2016, Brown unsuccessfully applied for seven positions within Rutgers:

(1) Program Manager, UBHC Supportive Housing;

(2) Program Director, Robert Wood Johnson Medical School – Office of Student and Multicultural Affairs;

(3) Program Coordinator, UBHC Club in Cherry Hill;

(4) Clinical Supervisor, UBHC – Brief Treatment;

(5) Clinical Care Coordinator, New Jersey Medical School, Department of Pediatrics;

(6) Assistant Dean II Supervisor Transfer Services – School of Engineering – Academic Affairs; and

(7) Clinician Supervisor, UBHC – Integrated Case Management Services.

On March 3, 2016, Brown filed a verified complaint with the Division alleging Rutgers discriminated against him by denying "several" promotions and transfers based on his race. The Division investigated Brown's allegations. As part of that investigation, the Division served a document and information request on Rutgers, whose responses included a detailed written statement of position, answers to the Division's information requests, and production of defendant's personnel file. The Division also reviewed the records, including letters and email exchanges between the parties.

4

In sum, Rutgers denied the allegations, claiming Brown "was not selected for the seven positions to which he formally applied for legitimate, non-discriminatory reasons." Those reasons included: cancellation of the position; submission of an application "too late in the hiring process"; the selection of "more qualified" individuals; and Brown's failure to apply "for positions in which he may have expressed interest."

In a detailed report, addressing each of the seven positions Brown challenged, the Division found

> of seven positions [Brown] applied for during the relevant period, two were awarded to African-American applicants. One position was never filled. And for two positions, interviews had already been conducted or a candidate had already been selected when [Brown] applied. For the remaining positions, [Rutgers] provided reasons unrelated to race for its personnel decision. In some cases, the position was a direct promotion from a position that the successful candidate had performed for a significant amount of time, giving that applicant experience that would be particularly relevant to the position. In one case, the selected candidate had been performing the position in an acting capacity.
>
> [Brown] argued that his Ph.D. and master's degrees meant that he was a superior candidate over those who held only master's degrees. [Brown]'s education is impressive. Under the circumstances, however, a higher level of education, without more, was insufficient to support the conclusion that [Rutgers]'s articulated reasons for selecting other

5

candidates was a pretext for race discrimination. The job postings made it clear that experience with the particular subject area was required or preferred, and the resumes showed that the successful candidates had relevant experience. In this context, the investigation could not conclude that valuing experience more highly than a Ph.D. was evidence of race discrimination.

Ultimately, the Director [of the Division] takes no position on the soundness of [Rutgers]'s hiring criteria or selection process, but finds that race was not a factor in the manner in which they were applied in this case. A factfinder's role in an employment discrimination case is not to "analyze the subjective business decisions of an employer, nor to set its own employment standards for the employer, unless there is evidence of discrimination." . . . Here, the Director finds that the [Division's] investigation uncovered no persuasive evidence – and none was produced by [Brown] – to show that the explanations proffered by [Rutgers] for its personnel decisions were merely pretexts and designed to mask unlawful motives.

Based on the investigation, and in the absence of persuasive evidence of a discriminatory animus, this case will be closed [based on a finding of no probable cause].

Accordingly, on September 28, 2018, the Director "determined pursuant to N.J.S.A. 10:5-14 and N.J.A.C. 13:4-10.2 that there [wa]s no probable cause to credit the allegations of [Brown's] complaint" and closed the Division's file. This appeal followed.

On appeal, Brown raises the following points for our consideration:

I. AFTER INVESTIGATION FROM [MARCH 30, 2016 TO SEPTEMBER 28, 2018], THE [DIVISION] CONCLUDED WITH A REVIEW OF SEVEN HAND-SELECTED POSITIONS (THERE WERE MORE FOR WHICH DR. LANCE BROWN HAD APPLIED) AND GIVES NO RATIONALE AS TO WHY THE SELECTED CANDIDATES WERE JUDGED TO BE SUPERIOR, WHY DR. BROWN DID NOT MEET MINIMAL QUALIFICATIONS FOR INTERVIEW AND THE FACTORS THAT SUGGEST THAT DR. BROWN WAS TREATED FAIRLY WITHOUT REGARD TO HIS RACE.
(Not Raised Below).

II. THE [DIVISION] FAILS TO IDENTIFY[] HOW AND WHY A LICENSED PSYCHOLOGIST WITH SENIORITY AND A GOOD EMPLOYMENT HISTORY (NO INFRACTIONS IN [SEVEN] YEARS) IS UNABLE TO GARNER AN INTERVIEW FOR ANY POSTED POSITION AND THE ROLE RACE PLAYED IN DRS. CEVASCO AND GREEN SUBMITTING BOGUS PERFORMANCE EVALUATIONS FOR DR. BROWN TO CREATE A NEGATIVE JOB HISTORY THAT DID NOT EXIST.
(Not Raised Below).

III. THE [DIVISION] RELIED SOLELY UPON SUBJECTIVE AND "WORD OF MOUTH" DATA WHEN WHOLLY OBJECTIVE INFORMATION WAS READILY AVAILABLE THROUGH THE ROCS ONBOARDING SYSTEM USED BY RUTGERS UNIVERSITY IN ITS[] HIRING PROCESS.
(Not Raised Below).

IV. [THE DIVISION] ACKNOWLEDGES THE INACCURACIES CONTAINED IN THE FINDING

OF NO PROBABLE CAUSE REPORT DATED
SEPTEMBER 28, 2018.
(Not Raised Below).

V. PERCEIVED FAILURE OF THE [DIVISION] TO
EMPLOY ADEQUATE RESOURCES AND TIME
INTO INVESTIGATING THE POTENTIAL
VIOLATIONS TO DR. BROWN'S CIVIL RIGHT BY
NOT EMPLOYING REASONABLE AND
EXPECTED EFFORTS.
(Not Raised Below).

Our limited review of an administrative agency's action is well settled. Russo v. Bd. of Trs., Police & Firemen's Retirement Sys., 206 N.J. 14, 27 (2011); Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988) (recognizing the appellate court's review of the Division's decision is circumscribed). "The Legislature established the Division to administer and enforce the LAD." Wojtkowiak v. N.J. Motor Vehicle Comm'n, 439 N.J. Super. 1, 12 (App. Div. 2015) (citing N.J.S.A. 10:5-6). "The Division 'has expertise in recognizing acts of unlawful discrimination, no matter how subtle they may be.'" Ibid. (quoting Clowes, 109 N.J. at 588). Given that expertise, we "afford[] a 'strong presumption of reasonableness' to [the Division]'s exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting Newark v. Nat. Res. Council, Dep't of Env't. Prot., 82 N.J. 530, 539 (1980)).

A-1518-18T1

"We may reverse the Director's decision only if 'the Director's finding is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction.'" Wojtkowiak, 439 N.J. Super. at 13 (quoting Clowes, 109 N.J. at 588). We "will not upset an agency's ultimate determination unless the agency's decision is shown to have been 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Ibid. (quoting Barrick v. State, 218 N.J. 247, 259 (2014)). Nonetheless, we "must survey the record to determine whether there is sufficient credible competent evidence in the record to support the agency head's conclusions." Ibid. (quoting Clowes, 109 N.J. at 587).

Brown fails to direct us to any authority supporting his contentions, which essentially challenge the sufficiency of the evidence upon which the Division based its finding of no probable cause. See generally R. 2:6-2 (requiring a table of citations of statutes, rules, caselaw and other authority). Further, most of Brown's assertions were not raised before the Division, and as such we need not review them on appeal. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

We have nonetheless considered all of Brown's contentions in light of the record and applicable legal principles and conclude they are without sufficient

merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed in the Division's thorough written decision, which "is supported by sufficient credible evidence on the record as a whole." R. 2:11-3(e)(1)(D).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1518-18T1