**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2815-20

IN THE MATTER OF
NATEA BOMAR,
CITY OF ORANGE TOWNSHIP,
POLICE DEPARTMENT.

_____

Argued September 29, 2022 – Decided October 19, 2022

Before Judges Geiger and Berdote Byrne.

On appeal from the New Jersey Civil Service Commission, Docket No. 2020-2531.

Frank C. Cioffi argued the cause for appellant Natea Bomar (Sciarra & Catrambone, LLC, attorneys; Frank C. Cioffi, of counsel and on the briefs).

John J.D. Burke argued the cause for respondent City of Orange Township (Scarinci & Hollenbeck, LLC, attorneys; John J.D. Burke and Lawrence M. Teijido, on the brief).

Susan M. Scott, Deputy Attorney General, argued the cause for respondent New Jersey Civil Service Commission (Matthew J. Platkin, Acting Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Craig S. Keiser, Deputy Attorney General, on the brief).

PER CURIAM

Natea Bomar appeals from a final administrative action of the Civil Service Commission (CSC) affirming her removal from employment as a City of Orange (Orange) police officer. She argues the CSC's decision is not supported by substantial, credible evidence in the record and therefore, the conclusions reached are arbitrary, capricious, or unreasonable. In the alternative, Bomar argues because recreational marijuana use has been legalized in New Jersey since she tested positive in 2019, and she otherwise has no prior disciplinary history, progressive discipline, not termination, is the appropriate disciplinary action.

Because we conclude Orange submitted sufficient, credible evidence that standard operating procedures were applied when Bomar's drug tests were performed, we conclude the CSC's decision is supported by the record and not arbitrary, capricious, or unreasonable. Additionally, we find no basis in law or in this record to conclude Bomar's claim that progressive discipline, not termination, is the appropriate disciplinary action. We affirm substantially for the reasons stated by ALJ in her thorough and well-reasoned written opinion, which were adopted by the CSC. We add the following comments.

Orange's police department maintains its own drug testing policies and procedures in accordance with the Attorney General's (AG) Directive 2018-2 "Statewide Mandatory Random Drug Testing" and Orange's Law Enforcement Drug Screening (LEDS) policy, testing a percentage of officers at random. If an officer tests positive, that officer is suspended from all duties and terminated from employment upon final disciplinary action. Bomar was selected randomly to submit to drug screening in accordance with Orange's LEDS policy on October 24, 2019, but was not asked to provide a urine sample until October 29, 2019, after her first shift back on duty. Pursuant to standard operating procedures, the specimen was split into two samples.[1]

The sample was provided to the NJSTL for testing. On December 17, 2019, Bomar's sample tested positive for tetrahydrocannabinol (THC), a

---

[1] Bomar did not request an independent test of the second urine sample when she learned of the positive urine test. The AG Policy was revised in April 2018, per Directive 2018-2 to advise that a person testing positive "may only challenge the positive test result by having the second specimen independently tested." Orange served a subpoena on the New Jersey State Toxicology Laboratory (NJSTL) requesting a person with personal knowledge of the testing procedures and protocols testify at the Office of Administrative Law (OAL) hearing. The NJSTL filed a motion to quash, arguing Bomar was not entitled to challenge the validity of the positive drug test because she did not have her second sample independently tested. The ALJ denied the motion to quash, ordering the NJSTL to designate a person with knowledge to appear at the hearing. The ALJ correctly reasoned, although Bomar did not request a second independent test, due process entitled her to challenge the test results and testing procedures.

A-2815-20

psychoactive chemical found in marijuana. Orange served Bomar with a Preliminary Notice of Disciplinary Action, advising her she was being charged pursuant to N.J.A.C. 4A:2-2.3(a)(6) "conduct unbecoming a public employee" and N.J.A.C. 4A:2-2.3(a)(12) "other sufficient cause" for violating Orange's LEDS program and suspended her without pay.

After Orange held a departmental disciplinary hearing, it issued a Final Notice of Disciplinary Action, removing Bomar as a police officer on March 26, 2020. Pursuant to the Administrative Procedures Act, N.J.S.A. 52:14B-1 to -15, Bomar appealed to the CSC for a hearing. After a hearing, the ALJ issued an initial decision on March 22, 2021, recommending the CSC sustain the charges against Bomar and affirm her termination. On April 28, 2021, the CSC accepted and adopted the ALJ's decision in full and issued a final administrative action. This appeal followed.

Our role in reviewing a final administrative agency decision is limited. In re Taylor, 158 N.J. 644, 656 (1999); Clowes v. Terminix Int'l Inc., 109 N.J. 575, 587 (1988). We must defer to a final agency decision unless it is arbitrary, capricious, or unsupported by substantial, credible evidence in the record. Taylor, 158 N.J. at 657. We must, therefore, determine whether the agency's findings could have reasonably "'been reached on sufficient credible evidence

A-2815-20

present in the record' considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge of their credibility.'" Id. at 656 (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). If we find sufficient, credible evidence in the record to support the agency's conclusions, then we must affirm even if we may have reached a different result. Clowes, 109 N.J. at 588; Goodman v. London Metals Exch., Inc., 86 N.J. 19, 28-29 (1981).

"When an agency's decision meets those criteria, then a court owes substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007). Further, the reviewing court is to provide a "'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). Whether the reviewing court would have come to a different conclusion is immaterial so long as there is not a "'clear showing' that [the decision] is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009) (quoting In re Herrmann, 192 N.J. at 27-

28). The burden of proof is on the party challenging the action. Lavezzi, 219 N.J. at 171.

On appeal, Bomar argues Orange did not meet its burden of proof regarding the chain of custody of her urine sample, and the ALJ improperly shifted the burden to her to demonstrate no tampering occurred. Specifically, she takes issue with the testimony of Dr. Robert Havier, Orange's expert, who testified as to the testing performed by the NJSTL but did not witness or perform the actual test, and the one-hour period the sample was removed from the NJSTL's refrigerator before testing. However, Bomar points to no rule or caselaw requiring the person who conducts the actual testing be the person who testifies as to the NJSTL's policies and procedures, or the validity of the actual tests performed.

Pursuant to OAL procedure rules, expert testimony is admissible if such testimony will assist in the understanding of the evidence or determine a fact in issue. The judge must consider that opinions or inferences are based on facts and data "perceived or made known" to the witness at or before the hearing, and the opinions or inferences are within the special "knowledge, skill, experience, or training" of that witness. See N.J.A.C. 1:1-15.9(b). Hearsay evidence is admissible and accorded whatever weight the judge deems appropriate, subject

A-2815-20

to the residuum rule, which requires some legally competent evidence to support each ultimate finding of fact to the extent sufficient to provide assurances or reliability and avoid the appearance of arbitrariness.  See N.J.A.C. 1:1-15.5(b).

In this case, although Dr. Havier did not perform the actual testing, he reviewed and certified all of the results and testified proper procedure had been followed.  He explained the testing process and chain of custody, stating the technician conducts testing "of a batch of specimens, roughly twenty-five total."  The ALJ found "Dr. Havier's review of all the data showed the [testing equipment's] functionality and that it performed correctly.  Regardless, the analysis of an individual's actual sample is based solely on the value obtained after the machine's accuracy is determined."

Bomar did not challenge the accuracy or calibration of the machine.  Instead, she suggested her specimen could have been tampered with during the time it was out of refrigeration, awaiting testing.  Dr. Havier specifically testified urine samples do not deteriorate in such a short period and the delay did not alter the testing's accuracy.  Bomar presented no evidence: expert, documentary, or otherwise, to rebut Dr. Havier's expert opinion that batch sampling is not standard operating procedure or that urine kept unrefrigerated for that length of time somehow affects the validity of the test.  She elected not

7

to have the second sample tested when she learned of the positive result, despite testifying she believed it to be a false positive. Her mere speculation the chain of custody could have been compromised is insufficient to overcome the reasonable probability of validity. See State v. Brown, 99 N.J. Super. 22, 28 (App. Div. 1968) (the legal standard applied for validity of the chain of custody is "a reasonable probability" that no tampering occurred). As such, the ALJ properly relied upon the credible testimony in the record, finding "Dr. Havier credibly and logically explained the testing delay and purpose and manner of calibrations before testing a sample" and "a preponderance of the evidence exists that the NJSTL tests urine specimens in batches and that a time delay of more than one hour was not unusual."

The ALJ also found Bomar's claims that she must have ingested marijuana unknowingly, from handling it during drug-related calls or from second-hand or inadvertent ingestion, insufficient to rebut Dr. Havier's credible testimony that cut-off levels are established to specifically exclude instances of inadvertent or secondary exposure. The ALJ found Bomar's testimony lacked specificity, rendering it unreliable. Bomar did not know why she tested positive. She testified her former fiancé used marijuana and ingested edibles, but she never participated, "[y]et Bomar was unsure if she was with her [former] fiancé around

October 2019." The ALJ specifically noted "Bomar did not testify whether she held marijuana or was in the presence of marijuana smoke on the day of the testing. Instead, she stated that she was on drug-related calls numerous times in the month before the testing but was unsure how many times."

This is not a case where Bomar's test results were close to the cut-off level. Her immunoassay test result was 84.261 ng/ml, where the cutoff is 20 ng/ml. The more refined gas chromatography mass spectrometry test, which utilizes a cutoff of 15 ng/ml, yielded positive test results of 52.9 ng/ml and 53.8 ng/ml, a result the ALJ noted "far exceeds the [15] ng/ml cut-off" and Bomar provided no medication to explain her test result. Bomar presents no evidence the ALJ's findings were arbitrary, capricious, or unreasonable, and we affirm the finding of a positive drug test for marijuana.

Bomar urges us to reconsider the disciplinary action taken by the CSC if we affirm the positive test finding, arguing the penalty of termination is too severe given the state's subsequent legalization of recreational use of marijuana and her lack of a prior disciplinary record. "[A] deferential standard applies to the review of disciplinary sanctions as well." In re Herrmann, 192 N.J. at 28. The reviewing court should not modify an agency-imposed sanction unless it is "necessary to bring the agency's action into conformity with its delegated

authority." Ibid. (quoting In re Polk, 90 N.J. 550, 578 (1982)). The reviewing court does not have the power "to substitute its judgment for that of the agency." Ibid. (quoting In re Polk, 90 N.J. at 578). In all, in evaluating an agency's imposition of a sanction, the court will determine "'whether [the] punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness.'" In re Herrmann, 192 N.J. at 28-29 (quoting In re Polk, 90 N.J. at 578). "The threshold of 'shocking' the court's sense of fairness is a difficult one, not met whenever the court would have reached a different result." Id. at 29.

Bomar relies upon two cases in support of her claim progressive discipline should be employed instead of termination. Not only are those cases unpublished,[2] but both are inapposite to her circumstances because the officers in those cases were able to specifically identify the substance that produced the

---

[2] See R. 1:36-3 ("No unpublished opinion shall constitute precedent or be binding upon any court. Except for appellate opinions not approved for publication that have been reported in an authorized administrative law reporter . . . no unpublished opinion shall be cited by any court.").

inadvertent positive result.[3]  In both cases the administrative agency imposed the discipline.  Neither case involved us overruling the agency's sanction.

In contrast, Bomar has been unable to present any specific action which resulted in her ingesting THC.  Rather, she merely states she must have ingested marijuana unknowingly either from being around it at work or by handling it for evidentiary purposes.  Dr. Havier specifically opined one could not test positive above the threshold by mere touching or second-hand smoke.  It is Bomar's burden to prove she mistakenly or unknowingly consumed marijuana.  See Lavezzi, 219 N.J. at 171.  Because she has not provided any specific reason as to how she could have unknowingly ingested marijuana, she has not presented sufficient mitigating factors that would justify a reduction from termination.  Additionally, the sanction of termination for a positive drug test is well promulgated and was known to Bomar.  Given termination is well within the

---

[3]  One case involved a corrections sergeant who had an initial penalty of termination reduced to a 120-day suspension.  The CSC reduced the recommendation of termination by the ALJ pursuant to progressive discipline because the officer's positive test for THC was attributed to use of CBD oil for back pain, not listed on his medication sheet.  The CSC found the positive result probably arose because of the CBD oil, given the low amount of THC in the sample.  In another case a corrections officer tested positive when he unknowingly ingested a supplement which contained benzoylecgonine, a derivate of cocaine.  The officer explained he did not know the banned substance was in the supplement.

CSC's delegated authority, we find nothing arbitrary, capricious, or unreasonable in the CSC's application of its disciplinary action.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2815-20