**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4016-17T2

IN THE MATTER OF J.E., JR.,[1]
DEPARTMENT OF
TRANSPORTATION.

_____

Submitted October 8, 2019 – Decided October 31, 2019

Before Judges Gilson and Rose.

On appeal from the New Jersey Civil Service Commission, Docket Nos. 2018-766, 2018-863 and 2018-866.

J.E., Jr., appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent Civil Service Commission (Donna Arons, Assistant Attorney General, of counsel; Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Department of Transportation (Donna Arons, Assistant Attorney General, of counsel; Ryne Anthony Spengler, Deputy Attorney General, on the brief).

_____

[1]  We use initials to protect the confidentiality of the parties.

PER CURIAM

Petitioner J.E. appeals a final decision of the Civil Service Commission (Commission), upholding a determination by the Department of Transportation's (DOT) Division of Civil Rights and Affirmative Action (Division) that petitioner violated the State Policy Prohibiting Discrimination in the Workplace (State Policy or policy), N.J.A.C. 4A:7-3.1. We affirm.

I.

This appeal has its genesis in discrimination and retaliation allegations made by Y.N., an African American DOT employee, against petitioner and three other DOT employees. Petitioner, who is Caucasian, was Y.N.'s supervisor in the DOT's Bureau of Structural Evaluation and Bridge Management. Relevant here, after conducting nearly twenty interviews and reviewing numerous documents, the Division substantiated Y.N.'s allegations against petitioner for race discrimination and retaliation. Ultimately, petitioner was issued a written warning.

We incorporate by reference the facts and procedural history set forth in the Commission's decision, summarizing the Division's investigation. The events that gave rise to both findings occurred in summer 2016 during meetings between Y.N. and petitioner.

A-4016-17T2

In early July 2016, Y.N. attempted to notify petitioner of an alleged discriminatory practice against his co-worker, S.O. Y.N. claimed, as a union representative and DOT's Equal Employment Opportunity (EEO) Advisory Committee member, he was authorized to speak on behalf of S.O., although S.O. was not present at the meeting. Petitioner challenged Y.N.'s authority to act on S.O.'s behalf; Y.N. conceded he lacked such authority. And, following a meeting with the Division's executive director in mid-July, Y.N. further acknowledged he would refrain from misrepresenting his position with the EEO.

Two weeks later, petitioner and his manager, G.R., met with Y.N. and "conduct[ed] a formal counseling session as a disciplinary measure" to address Y.N.'s prior "insubordination and misrepresentation of his authority." At G.R.'s direction, petitioner drafted a memorandum memorializing the meeting. According to the memorandum, the "primary" issue that prompted the counseling meeting was Y.N.'s misrepresentation of his roles as a union representative and EEO Advisory Committee member. The memorandum vaguely referenced discussions about "several other examples of action that could [have] be[en] perceived as insubordinate." Those examples were not specifically identified in the memorandum.

A-4016-17T2

Y.N. refused to acknowledge receipt of the memorandum. Instead, Y.N. stated "he was going to go to the [Division]." Petitioner claimed he was confused by Y.N.'s response, prompting petitioner to ask Y.N. several questions to clarify the meaning of the statement during their hour-long conversation. Ultimately, petitioner "blurted out, 'Are you going to [the Division] because you are black?'"

During the course of the Division's investigation, petitioner acknowledged he posed that question to Y.N., but "denied subjecting [Y.N.] to race discrimination." Petitioner said

> he believed [Y.N.] was misinformed regarding the role of [the Division] and often says he is going to [the Division] even when the situation does not warrant it. [Petitioner] stated that many people in the unit think [Y.N.] uses [the Division] as intimidation. [Petitioner] explained his statement was intended to stress to [Y.N.] the only reason he should be complaining to [the Division] is if he believes he is being discriminated against based on his race or other [protected] category.

In essence, petitioner claimed he intended "to help [Y.N.] understand that [his] reason for going to [the Division] was not valid."

The Division substantiated Y.N.'s allegations of race discrimination, finding "[t]he manner and context of the question was demeaning, especially from a supervisor." The Division also determined petitioner retaliated against

Y.N. by conducting a disciplinary counseling session after Y.N. reported alleged discrimination against S.O. The Commission denied petitioner's ensuing appeal, finding the Division conducted an adequate investigation.

With regard to Y.N.'s claim of discrimination based on race, the Commission recognized

> it was inappropriate for [petitioner] to question Y.N.'s motives in going to [the Division] based on any protected category of which Y.N. is a member. Once Y.N. expressed his intention to file a complaint with [the Division], [petitioner] should not have asked any questions concerning Y.N.'s intent or thought process. Rather, [petitioner] was required to refer the matter to [the Division] for its investigation. Attempting to question Y.N. as to why he was going to file a complaint could have improperly given the impression that [petitioner] was attempting to convince Y.N. not to file a complaint. Such an impression would be at odds with the State Policy, which encourages the reporting of alleged workplace discrimination and commits the State to providing a work environment free from prohibited discrimination or harassment. See N.J.A.C. 4A:7-3.1. As such, [the Division] appropriately found [petitioner]'s question to be a State Policy violation.

Turning to Y.N.'s allegations of retaliation, the Commissioner found:

> Y.N. engaged in protective activity when he met with G.R. and [petitioner] to report alleged discrimination against S.O., regardless of whether Y.N. had S.O.'s consent to do so. See N.J.A.C. 4A:7-3.2(a) ("All employees . . . have the right and are encouraged to immediately report suspected violations of the State Policy . . . .") . . . . It was only after Y.N. engaged in

5

this protected activity that G.R. and [petitioner] issued the . . . counseling memo . . . [which was] incorporated into their . . . request for discipline.

As further support for its decision, the Commission referenced the disparity in the memorandum regarding the reasons for the counseling meeting:

The memo stated that the "primary" situation that prompted the counseling was Y.N.'s misrepresentation on more than one occasion of his role as union representative or EEO Advisory Committee member. However, the investigation revealed that G.R. and [petitioner] failed to provide any other instances of Y.N.'s alleged misrepresentation and only identified the one incident involving S.O. wherein Y.N. engaged in protected activity.

This appeal followed. On appeal, petitioner raises the following points for our consideration:

I. The Commission erred in finding [petitioner] violated N.J.A.C. 4A:7-7-3.1 . . . as it confused its interpretation of an inappropriate inquiry with a demeaning reference.

II. The Commission's finding that [Y.N.]'s allegations that discipline was retaliation for protected activity were substantiated is a clear material error.

III. The Commission was arbitrary and capricious when it failed to address [Y.N.]'s false discrimination complaint.

6

A-4016-17T2

II.

Our limited review of an administrative agency's action is well settled. Russo v. Bd. of Trs., Police & Firemen's Retirement Sys., 206 N.J. 14, 27 (2011). Reviewing courts "afford[] a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting Newark v. Nat. Res. Council, Dep't of Envtl. Prot., 82 N.J. 530, 539 (1980)). That presumption is particularly strong when an agency is dealing with specialized matters within its area of expertise. Nat. Res. Council, 82 N.J. at 539-41. We therefore defer to "[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility . . . ." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (internal quotation marks omitted). We do not substitute our judgment for that of the agency and, if there is any argument supporting the agency action, it must be affirmed. Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988).

For those reasons, "an appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by

A-4016-17T2

substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

The Commission adopted the State Policy pursuant to its authority to "[a]dopt and enforce rules . . . to effectively implement a comprehensive personnel management system" for all state employees. N.J.S.A. 11A:2-6(d). Relevant here, "[i]t is a violation of [the] policy to use derogatory or demeaning references regarding a person's race . . . [which is a] protected category . . . ." N.J.A.C. 4A:7-3.1(b). An example of prohibited activity includes "[e]ngaging in threatening, intimidating, or hostile acts toward another individual in the workplace because that individual belongs to, or is associated with, any of the protected categories . . . ." N.J.A.C. 4A:7-3.1(b)(1)(vi).

Retaliation also is expressly prohibited under the policy. N.J.A.C. 4A:7-3.1(h) (prohibiting "[r]etaliation against any employee who . . . provides information in the course of an investigation into claims of discrimination . . . in the workplace"). Accordingly, no employee "shall be subjected to adverse employment consequences" for bringing a discrimination complaint or

providing information about alleged discrimination. Ibid. Prohibited activities include "[i]mposing or threatening to impose disciplinary action on an employee for reasons other than legitimate business reasons . . . ." N.J.A.C. 4A:7-3.1(h)(4).

The State Policy "is a zero tolerance policy." N.J.A.C. 4A:7-3.1(a). Accordingly, disciplinary or corrective action can be taken "regardless of whether the conduct satisfies the legal definition of discrimination . . . ." N.J.A.C. 4A:7-3.1(a). "A violation of [the] policy can occur even if there was no intent on the part of an individual to harass or demean another." N.J.A.C. 4A:7-3.1(b).

Having considered petitioner's contentions in view of the record and these applicable legal principles, we conclude they are without sufficient merit to warrant further discussion in our written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed in the Commission's well-reasoned final decision, which "is supported by sufficient credible evidence on the record as a whole." R. 2:11-3(e)(1)(D). We add only the following brief remarks.

Petitioner contends his use of the term "black" was taken out of context, and not made with the intent to threaten, demean, or attempt to convince Y.N. to refrain from filing a complaint with the Division. Although the State Policy

could have been violated notwithstanding his intent, N.J.A.C. 4A:7-3.1(b), the Commission also considered the context and timing of petitioner's remark, i.e., it was made after "Y.N. expressed his intention to file a complaint with [the Division] . . . ." Indeed, the Division initially determined, "[g]iven the [DOT's] zero tolerance of prohibited behaviors, and that [petitioner was] a supervisor, [he was] held to a higher standard . . . ." See also N.J.A.C. 4A:7-3.1(e) (requiring supervisors to "make every effort to maintain a work environment that is free from any form of prohibited discrimination").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4016-17T2