**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3668-21

IN THE MATTER OF AUGUSTIN
ALVAREZ, UNION COUNTY,
DEPARTMENT OF
CORRECTIONS.

_____

Submitted March 4, 2024 – Decided July 26, 2024

Before Judges Gilson and Bishop-Thompson.

On appeal from the New Jersey Civil Service Commission, Docket No. 2021-1692.

Dvorak & Associates, LLC, attorneys for appellant Augustin Alvarez (Lori A. Dvorak, of counsel and on the briefs; Grace E. Lempka, on the briefs).

Eric M. Bernstein & Associates, LLC, attorneys for respondent Union County, Department of Corrections (Eric M. Bernstein and Brian M. Hak, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Civil Service Commission (Craig S. Keiser, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellant Augustin Alvarez, a senior corrections officer, appeals from a June 20, 2022 final administrative decision of the Civil Service Commission (CSC), finding that he neglected his duty and other sufficient cause and imposing a twenty-eight-day suspension without pay. We affirm.

I.

We discern the following facts from the hearing record. The charges against Alvarez arise from the death by suicide of an inmate, Ibrahim Mater, that occurred on October 16, 2018 at the Union County jail. Following Matar's death, the Union County Prosecutor's Office (Prosecutor's Office) commenced an investigation regarding potential criminal charges. Correction Officers Antonio Melendez, Jakari Lee, and Wesley Peters were not charged in indictable criminal complaints related to Matar's death. However, it was determined the officers violated the Union County Department of Corrections (UCDOC) General Order A paragraphs 31, 32, and 33 in failing to perform required security checks and to properly record some of the security checks in the logbook.

The investigation also revealed that Alvarez, as their supervising sergeant, was not subject to criminal charges because he had performed two tours of 4B pod as required. The Prosecutor's Office did not consider whether Alvarez

committed any violation of the UCDOC's General Orders regarding his supervision of the three officers.

In a November 13, 2018 letter, the Prosecutor's Office notified UCDOC the investigation was completed and it would not seek to bring criminal charges against Alvarez. The Prosecutor's Office also "exonerated [Alvarez] of any violations of the Union County Corrective Services Rules including General Post Orders effective March 19, 2012." Three days later, the Prosecutor's sent a clarification letter to the UCDOC, stating:

> Our exoneration of Sgt. Alvarez is limited to any violations of the Union County Corrections Services Rules, specifically General Post Order, pp. 1-14, effective March 19, 2012. . . . Consistent with N.J.S.A. 40A:14-147, the Department of Correctional Services retains administrative and disciplinary authority for any potential violation, outside of the March 19, 2012 General Post Order, concerning Sgt. Alvarez's conduct.

Thereafter, the UCDOC served a preliminary notice of disciplinary action, charging Alvarez with (1) statutory misconduct, N.J.S.A. 30:8-18.2; (2) incompetency, inefficiency, or failure to perform duties, conduct unbecoming a public employee, neglect of duty, and other sufficient cause, N.J.A.C. 4A:2-2.3(a); and (3) violations of UCDOC rules regulations. He was specifically charged with violating General Post Orders effective March 19, 2012; General Post Order #3 & #9 4th and 6th Floor, effective January 4, 2014; Post 4B Male

3

Reception Unit Order, effective February 13, 2013; and Populations Count Order, revised August 20, 2018. Alvarez was also immediately suspended without pay.

A disciplinary hearing was conducted. A final notice of disciplinary action was served, sustaining the charges, and imposing a twenty-eight-day suspension without pay, which Alvarez served from October 22, 2018 to November 18, 2018. Alvarez appealed the disciplinary action to the CSC, and the contested matter was transferred to the Office of Administrative Law (OAL).

A non-consecutive two-day hearing was held before the administrative law judge (ALJ). The UCDOC presented testimony from then-Lieutenant Noel Gonzalez, a shift commander and internal affairs supervisor. Gonzalez testified that he was assigned the investigation, which consisted of a review of the logbook, the video of the 4B pod for October 16, and all the material that was provided by the Prosecutor's Office. He also interviewed Alvarez, Melendez, Lee, and Peters. Gonzalez also prepared an administrative investigation report.

Gonzalez reviewed the video and saw Alvarez enter the 4B pod at approximately 12:45 p.m. and toured the lower level. Alavarez went to the officer's station and signed the logbook at 12:53 p.m., noting that he was on tour, Melendez was on post, and Lee and Peters were on a break. Gonzalez also found

4

that eight of the ten scheduled checks from 8:00 a.m. to 12:30 p.m. had not been performed.

At approximately 1:03 p.m., Alvarez began the tour on the second floor and found Matar hanging from his bunk. Alvarez immediately called a "Code White" and "yelled" down to Melendez to open the cell. Alvarez and Melendez entered the cell and cut Matar down. Alvarez administered cardiopulmonary resuscitation (CPR). After Matar was removed from his cell, he was transported to Trinitas Hospital. The next day, Matar died.

When Gonzalez arrived at Matar's cell, he took pictures of the evidence, secured the cell, and went to the shift commander's office to obtain the logbook, which had been secured by Lieutenant William Gargiles. According to Gonzalez, he had no further involvement until after the Prosecutor's Office completed its investigation.

Gonzalez interviewed Lee who admitted that he was on break at the time of the incident and was not present for the 12:30 p.m. security check. Lee also admitted that he was the officer that recorded and initialed the "all secure" entry on the half hour from 8:00 a.m. to 12:00 p.m., which denoted that a tour of 4B had been completed. Gonzalez also stated that it did not appear Lee had advised Alvarez that he was leaving the unit.

A-3668-21

Gonzalez also testified regarding his interview with Melendez. According to Gonzalez, when Melendez returned from lunch, Peters responded in the affirmative when asked if everything was secure. Peters told Alvarez that he was leaving, and Alvarez returned to the pod for his tour. Melendez told Gonzalez that Alvarez toured the lower level, went to the desk, signed the logbook, and went to tour the upper level. Alvarez "almost immediately called out that [Matar] was hanging." Melendez retrieved the key to the cell, ran upstairs, and opened the cell door. Matar was cut down and Alvarez performed CPR.

Melendez admitted that he wrote "all secure" in the logbook at 12:00 p.m. based on Peters representation. Melendez, however, did not initial the entry or personally perform the security check.

Gonzalez acknowledged that Alvarez conducted the two required tours as the area supervisor. However, Gonzalez was critical of Alvarez's supervisory actions, particularly that Alvarez "missed" the omission of the 12:30 p.m. security check and the undocumented breaks of the officers when Alvarez signed the logbook at 12:53 p.m. Alvarez failed to address those issues with the officers. Gonzalez testified that Alvarez also did not use the cameras which were available for supervisors to review and "check in" on their officers.

6

Gonzalez found Alvarez neglected his duty by failing to observe and advise the shift commander of the discrepancies with the logbook.

In response, Alvarez presented testimony from Union County Special Prosecutor's Unit Detective Dennis Donovan, former UCDOC Assistant Director Robert Cesaro, and then-retired Gargiles.

Donovan testified that he reviewed the Post Order, Post Sergeant #3 and #9 4th and 6th Floor, effective January 4, 2013. Donovan also stated Alvarez was exonerated because he performed his two (2) tours as per the Post Order. Donovan, however, explained that he did not make a determination relative to any other violations of the Post Orders. On cross-examination, Donovan testified that Alvarez had an opportunity to review the discrepancies when he signed the logbook. He also testified that he had not seen the November 16 clarification letter stating that Alvarez's exoneration applied to a specific Post Order and that the UCDOC retained administrative and disciplinary authority for any potential violations.

Cesaro testified that Alvarez failed to properly supervise the three officers and failed to uphold department policy and procedure during the incident. He stated the twenty-eight-day suspension without pay was "adequate" for a "serious charge." Cesaro explained that the UCDOC had filed disciplinary

7

charges against other area supervisors for failing to supervise and that those supervisors received six-month suspensions without pay.

Gargiles testified that as the floor lieutenant on October 16th he was responsible for oversight of all floors in the jail. He stated that he immediately secured the logbook after the incident. Gargiles also acknowledged that under the post orders, area supervisors were responsible for ensuring the officers' compliance with the post orders.

Alvarez testified that on October 16th, he was a "rover" and was only responsible for the 4A and 4B pods. He also testified that he performed the two security checks, saw Matar in "distress" during the second security check, and began the protocol to enter Matar's cell. He testified that on numerous occasions, when asked if they had conducted security checks, the officers stated they had. As to the logbook, Alvarez signed the logbook at 12:53 p.m. but did not notice any discrepancies or that the 12:30 p.m. check had not been performed. He also testified that he had no disciplinary history.

On cross-examination, Alvarez admitted that he was responsible for reviewing the logbook to ensure its accuracy. He was also familiar with the Sergeant Post Orders and admitted that he was required to ensure that all officers complied with all post orders, policies, procedures, rules, and regulations of the

8

UCDOC.  In that regard, Alvarez also acknowledged that he should have taken corrective action with the officers to address violations of those policies and procedures when necessary.

In a May 5, 2022 written decision, the ALJ sustained the neglect of duty charge, the other sufficient cause charge, and the twenty-eight-day suspension. The ALJ concluded the UCDOC did not meet its burden in proving the conduct unbecoming and incompetence charges.

The ALJ found the UCDOC had "proven by a preponderance of the credible evidence that . . . Alvarez neglected his duty by failing to properly supervise the three officers on duty on October 16, 2018."  In finding Alvarez neglected his duty, the ALJ explained:

> It was his job to ensure that his staff complied with policies, procedures, Post Orders, etc. and he did not. The problem, however, was not so much the missing 12:30 p.m. logbook entry that was the focus of so much discussion.  Rather, the problem was the failure to detect that his officers failed to conduct [eighty percent] of the security checks that they were supposed to perform.  Not only did he fail to utilize the one extrinsic tool available to him (the video system), but he failed to visually notice that these checks were not being performed.  This is notable too, since there was testimony that the unit was busy, with prisoner movement, lunch breaks, staffers off site, etc.

As to the charge of other sufficient cause, the ALJ stated:

9

In reality, while a separate charge, it clearly falls under the auspices of the "neglect of duty" charge and given the basis for that finding, I am compelled to [conclude] that . . . Alvarez violated the Sergeant Post Orders by failing to ensure that Officers Lee, Peters[,] and Melendez complied with all applicable rules and regulations during their shift.

Alvarez appealed to the CSC. On June 20, 2022, the CSC issued a final administrative decision that accepted and adopted the ALJ's findings of fact and conclusions of law and affirmed Alvarez's twenty-eight-day suspension.

II.

Alvarez raises the following arguments on appeal:

POINT I

The [CSC] erred in their acceptance and adoption of the erroneous findings of [the ALJ]'s substantive analysis, legal analysis[,] and determination of the charges and penalty.

POINT II

[The ALJ] erred in his application of the facts as to the substantiative analysis, legal analysis, and determination of the charges and penalty.

A.   Misinterpretation of facts and testimony.

B.   As to the responsibilities of a Unit 4A, 4B Rover Post Sergeant.

C.      An absence of an analysis as to the [UCDOC's] investigation being barred by Prosecutor's Office exoneration.

D.      An absence of an analysis or decision as to the pre-emption issue.

E.      An absence of an analysis as to the impropriety of Lt. Gonzalez's investigation.

F.      An absence of an analysis as to why whether the investigation should have proceeded up the chain was "largely irrelevant."

POINT III

[The ALJ's] assessment of the charges and penalty as it was imposed was arbitrary, capricious[,] and/or unreasonable.

POINT IV

The [CSC] erred in allowing Respondent's untimely written exceptions to be admitted in the record.

POINT V

The [CSC] erred in analyzing [the ALJ's] erroneous opinion and concluded that [Alvarez's] written exceptions to the [ALJ's] initial decision were "not a significant factor."

We are not persuaded by any of these arguments and affirm.

Our review of quasi-judicial agency determinations is limited.  Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing

11

Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "An agency's determination on the merits will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo, 206 N.J. at 27) (internal quotation marks omitted).

We "afford[] a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). That presumption is particularly strong when an agency is dealing with specialized matters within its area of expertise. Newark, 82 N.J. at 540. We, therefore, defer to "'[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility . . . .'" Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J. Super. 93, 102 (App. Div. 1997)). "'A reviewing court may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 238-39 (App. Div. 2019) (internal quotation marks omitted) (quoting In re Stallworth,

208 N.J. 182, 194 (2011)).  However, if there is "any fair argument" supporting the agency action, it must be affirmed.  In re Stormwater Mgmt. Rules, 384 N.J. Super. 451, 465-66 (App. Div. 2006).  The party challenging the administrative action bears the burden of making that showing.  Lavezzi, 219 N.J. at 171.

Based upon our review of the record, we are satisfied that there is sufficient credible evidence in the record to support the charges of neglect of duty and other sufficient cause.  We are also satisfied that the determination was based on a careful review of the record, the initial decision and the exceptions filed, and an "independent evaluation" of the record.

We are also satisfied the CSC did not act arbitrarily, capriciously, or unreasonably in affirming the twenty-eight-day suspension.  The record shows that CSC and the ALJ considered Alvarez's lack of prior discipline. Accordingly, Alvarez's suspension was appropriate and we "accord substantial deference to [the CSC's] choice of a . . . sanction."  In re Herrmann, 192 N.J. 19, 36 (2007).  Given the tragic circumstances of October 16, 2018 the suspension was not disproportionate to Alvarez's the lack of compliance with the post orders.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-3668-21