**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0690-23

REGINA GENSEL,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued November 20, 2024 – Decided January 31, 2025

Before Judges Marczyk and Torregrossa-O'Connor.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx5293.

Samuel M. Gaylord argued the cause for appellant (Szaferman Lakind Blumstein & Blader, attorneys; Samuel M. Gaylord, on the brief).

Yi Zhu, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Yi Zhu, on the brief).

PER CURIAM

Petitioner Regina Gensel appeals from the September 21, 2023 final agency decision of the Board of Trustees (Board) of the Public Employees' Retirement System (PERS), adopting the Administrative Law Judge's (ALJ) initial decision denying her request for accidental disability retirement benefits. Based on our review of the record and applicable legal principles, we affirm.

I.

Petitioner was a senior clerk for the Atlantic County Family and Community Development fiscal department from 2008 through May 2018. She claims that on August 13, 2013, she slipped and fell on water while delivering paperwork. In May 2018, petitioner filed an application for disability retirement seeking "accidental disability" benefits. She claimed she injured her right shoulder, right arm, and right hand, which required surgical intervention.

The Board subsequently denied petitioner's accidental disability application. It noted that although petitioner was "totally and permanently disabled from the performance of her regular and assigned duties," she was not entitled to benefits because the "total and permanent disability [was] not the

2

direct result of the aforementioned incident[,] but was an aggravation of a pre-existing condition."[1]

Petitioner appealed and requested the matter be transferred to the Office of Administrative Law (OAL) for a hearing. The Board approved petitioner's request and transferred the matter to the OAL to assign an ALJ for a contested hearing.

The ALJ heard testimony on three dates between March 2021 and January 2023. Petitioner testified that prior to the August 2013 fall, she did not have any trouble performing her duties at work. However, she admitted she was receiving treatment and injections for her shoulder arthritis and bursitis prior to her fall. She noted work became increasingly difficult after the fall, impacting her ability to perform certain tasks, such as carrying buckets of mail, which caused pain to her shoulder, wrist and elbow. Petitioner received physical therapy but claimed it was too painful, so she chose to stop attending her appointments. She recounted that Dr. Matthew Pepe, an orthopedic surgeon, recommended that she undergo shoulder surgery. She recalled the surgery took place in May 2014.

---

[1] The Board also determined petitioner lacked the requisite number of years of service to qualify for ordinary disability retirement benefits. This issue is not addressed on appeal.

A-0690-23

She never returned to work after the surgery because of complications associated with the procedure.

Petitioner's husband, Steven Gensel, also testified on behalf of petitioner. He testified regarding her automobile accident in 2005, when she suffered injuries to her neck and rotator cuff. He testified she was admitted to the hospital and learned her "right shoulder was hurt and she had a broken neck." Petitioner underwent surgery in 2006 to treat her neck injuries.[2] He testified petitioner later had another surgery in 2009 to treat her right shoulder injuries because she "had problem[s] healing."

Dr. David Weiss, a board-certified orthopedist, also testified on behalf of petitioner. He concluded the August 2013 slip and fall caused a "SLAP tear,"[3] which had not been diagnosed prior to the fall, and that the labral tear was the substantial cause of petitioner's disability. Dr. Weiss based his opinion on a January 2013 MRI without contrast, which depicted the "glenoid labrum . . . intact." He opined the labral tear "was . . . a distinct injury as a result of the August 2013 incident" and discussed the long-term problems a labrum tear

---

[2] Petitioner underwent two-level cervical fusion surgery at C5-6 and C6-7 in February 2010.

[3] Dr. Weiss explained a SLAP labral tear was a superior labrum anterior to posterior tear of the labrum.

A-0690-23

causes even after repair. He noted that Dr. Pepe performed a rotator cuff repair, debridement of the calcific tendinopathy, debridement of the labral tear, and a biceps tenotomy in May 2014. Petitioner also had another impingement surgery on her shoulder in November 2016.

Dr. Weiss reviewed petitioner's medical records and compared her condition before and the 2013 fall. He acknowledged her shoulder injuries prior to the fall and the extensive medical treatment she received following her 2005 motor vehicle accident. He further noted petitioner underwent shoulder surgery for that injury in 2009. Dr. Weiss stated petitioner returned to work without restrictions and, although she continued treatment for her shoulder, performed activities without problems until the 2013 slip and fall. He maintained petitioner's fall at work was the "substantial cause" of her disability.

Dr. Jeffrey Lakin, a board-certified orthopedic surgeon, testified on behalf of the PERS Board and concluded petitioner's 2013 slip and fall was not the cause of her disability. Rather, he opined it only aggravated her pre-existing right shoulder injuries. He testified petitioner's medical records revealed she sustained a right shoulder injury following her 2005 motor vehicle accident and underwent surgery in 2009, which, according to her medical records, did not relieve her shoulder pain. He noted she continued to have "significant problems"

5

with her shoulder, and it was "markedly symptomatic" prior to her 2013 accident. Specifically, he testified that Dr. Richard Islinger was considering right shoulder surgery in May 2013, including possible rotator cuff repair and ultrasonic labral debridement. In fact, Dr. Lakin testified this was the "same surgery" Dr. Pepe eventually performed in 2014.

Dr. Lakin also reviewed the January 2013 MRI films taken months prior to petitioner's accident. He noted the MRI was performed without contrast, and an MRI with contrast would have been the best way to see a labral tear, as it is "the gold standard" to diagnose such a tear. He further reviewed the MRI with contrast that was performed after the 2013 fall and opined:

> when it's extensive labral tearing that involves the whole labrum that's something that's been going on for years and years. And when you read the MRI that was done after the [2013 fall,] that [demonstrated] there was no . . . bone contusions that would show something acute. So, this pathology of the labrum with extensive tearing is not due [to] a single traumatic event. It's due [to] a long[-]standing problem with the shoulder that's degenerative in nature.

Thus, according to Dr. Lakin, the 2013 fall "was just a minor contributing factor." He also found it important that petitioner returned to work after the accident "to work light duty," indicating her disability was not a direct result of the accident.

6

The ALJ affirmed the Board's decision, denying petitioner's application for accidental disability retirement benefits. Although the ALJ generally found both experts credible, she deemed Dr. Lakin's testimony more persuasive and entitled to greater weight. She observed that petitioner's prior right shoulder injury as a result of the 2005 motor vehicle accident and subsequent surgery in 2009 were pre-existing conditions aggravated by the 2013 fall. Specifically, she noted, petitioner "was clearly symptomatic with persistent and long-standing right shoulder pain from a previous shoulder injury sustained in a motor vehicle accident [in] . . . 2005, and requiring surgery in 2009."

The ALJ noted petitioner continued to have significant right shoulder pain prior to the accident which was documented in Dr. Islinger's notes as recently as four months prior to the 2013 accident. The ALJ stated petitioner's other treating physician records also documented she was still having significant pain in her right shoulder with no relief from the 2009 shoulder surgery. She found Dr. Lakin testified "quite convincingly that the labral tearing is part of a long-standing degenerative process." She observed that in May 2013, petitioner characterized her pain as "eight out of ten" to Dr. Islinger.

The ALJ concluded that the August 2013 fall "was not the essential significant or substantial contributing cause of [petitioner]'s disability, but rather

her significant pre-existing degenerative changes in her right shoulder following her 2005 car accident and subsequent surgery in 2009 were the cause of her disability." The ALJ found the August 13, 2013 fall "was minor in comparison" to petitioner's pre-existing injuries.

On September 21, 2023, the Board issued its final decision and adopted the ALJ's initial decision denying petitioner's accidental disability retirement application. This appeal followed.

II.

Petitioner argues the Board erred in adopting the ALJ's decision and finding her disability was an aggravation of a pre-existing condition. She contends the evidence showed she sustained her burden and demonstrated her disability was substantially caused by the August 2013 incident.

Our review of an administrative agency's final decision is limited. In re Carter, 191 N.J. 474, 482 (2007). We afford "a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). Absent arbitrary, unreasonable, or capricious action, or a lack of support in the record, the agency's final decision will be sustained. In re Herrmann, 192 N.J.

19, 27-28 (2007). In determining whether agency action is arbitrary, capricious, or unreasonable, we must examine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Carter, 191 N.J. at 482-83).]

We defer to the Board's interpretation of the statutes it is charged with enforcing. Thompson v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 449 N.J. Super. 478, 483 (App. Div. 2017) (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007)). However, an appellate court is "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Richardson, 192 N.J. at 196 (quoting In re Taylor, 158 N.J. 644, 658 (1999)). Also, "[a] reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Stallworth, 208 N.J. at 194 (quoting Carter, 191 N.J. at 483).

Under N.J.S.A. 43:15A-43, a member of PERS becomes eligible for accidental disability retirement benefits if the "employee is permanently and

totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of [their] regular or assigned duties." The Legislature amended N.J.S.A. 43:15A-43 in 1966 to add the phrase "direct result," reflecting the Legislature's intent "to make the granting of an accidental disability pension more difficult." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 183 (1980) (quoting Cattani v. Bd. of Trs., Police & Firemen's Ret. Sys., 69 N.J. 578, 584 (1976)).

Our Supreme Court later explained, to establish that an individual has suffered a "traumatic event" within the meaning of N.J.S.A. 43:15A-43, a member of the pension system must demonstrate the following to qualify for accidental disability retirement benefits:

> 1.  that [the member] is permanently and totally disabled;
>
> 2.  as a direct result of a traumatic event that is
>
>     a.  identifiable as to time and place,
>
>     b.  undesigned and unexpected, and
>
>     c.  caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3.  that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4.    that the disability was not the result of the member's willful negligence; and

5.    that the member is mentally or physically incapacitated from performing [her] usual or any other duty.

[Richardson, 192 N.J. at 212-13.]

The five-part test "is an extraordinarily high threshold that culls out all minor injuries; all major injuries that have fully resolved; all partial or temporary disabilities; and all cases in which a member can continue to work in some other capacity." Id. at 195. Our Supreme Court has also instructed that "the traumatic event need not be the sole or exclusive cause of the disability." Gerba, 83 N.J. at 187 (emphasis omitted). Causation is satisfied when "the traumatic event is . . . the essential significant or substantial contributing cause of the disability . . . even though it acts in combination with an underlying physical disease." Ibid. However, if the traumatic event merely "contributed to the progression of th[e] [underlying] condition" by "aggravation," then it is not the "essential significant or substantial contributing cause" of the disability. Id. at 189, 187.

The applicant bears the burden of proving causation and must produce "expert evidence as is required to sustain that burden." Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 51 (2008); see also Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 428 (2018).

Petitioner asserts the Board's decision in adopting the ALJ's opinion failed to appropriately apply the "[s]ubstantial [c]ause" test. Petitioner relies heavily on this court's decision in Petrucelli v. Board of Trustees, Public Employees' Retirement System, 211 N.J. Super. 280, 288-89 (App. Div. 1986), where we upheld an award of accidental disability benefits for a claimant whose underlying condition was non-symptomatic until he fell down a stairwell at work. The work injury triggered pain and symptoms that resulted in permanent disability. Id. at 286. The claimant's past medical history was negative for back problems, and he had enjoyed a "vigorous lifestyle" before the accident. Id. at 284.

Petitioner argues the underlying facts in Petrucelli are analogous to her circumstances and cites to Dr. Weiss's testimony where he concludes petitioner's 2013 accident was the substantial cause of her disability. However, the record before this court refutes the comparison with Petrucelli. Here, the ALJ found, unlike in Petrucelli, petitioner "was clearly symptomatic with persistent and

long-standing right shoulder pain from a previous shoulder injury," and petitioner had continued to complain of pain in her right shoulder as late as a few months prior to her slip and fall. Moreover, the court found Dr. Lakin's testimony to be credible that petitioner's 2013 accident was not the "substantial contributing cause" of her disability. Instead, she concluded petitioner's disability was the result of her "significant pre-existing degenerative changes in her right shoulder" stemming from her 2005 automobile accident and subsequent surgery.

Here, the record amply supports the ALJ's findings as adopted by the Board that petitioner's disability was not the direct result of the 2013 slip and fall accident. It was undisputed that petitioner was treating for injuries she sustained in the 2005 motor vehicle accident only months prior to the 2013 slip and fall at work. The Board's decision denying the accidental disability claim was supported by sufficient credible evidence in the record, and it reasonably concluded petitioner's injuries were substantially caused by petitioner's significant pre-existing injury and degenerative condition as opined by Dr. Lakin. Accordingly, we conclude the Board did not act arbitrarily, capriciously, or unreasonably in denying petitioner's application.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-0690-23