**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0997-23

ARTHUR L. DIGGS,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued April 9, 2025 – Decided July 25, 2025

Before Judges Paganelli and Torregrossa-O'Connor.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx3243.

Timothy J. Foley argued the cause for appellant (Taylor & Boguski, LLC, and Foley & Foley, attorneys; Gary W. Boguski, of counsel and on the briefs).

Matthew Melton, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Matthew Melton, on the brief).

PER CURIAM

Petitioner Arthur Diggs appeals from the October 19, 2023 final agency decision of the Board of Trustees (Board) of the Public Employees' Retirement System (PERS), adopting the initial decision of the Administrative Law Judge (ALJ), denying petitioner's request for accidental disability retirement benefits (ADRB) and finding him ineligible for ordinary disability retirement benefits (ODRB).  Based on our review of the record and applicable legal principles, we affirm.

I.

Petitioner was employed as a "laborer" for the City of Burlington from 1995 through May 2013.  On December 31, 2013, petitioner filed an application for ADRB, based upon a work-related injury on September 8, 2006.  He was "thrown onto [his] back from [a] high pressure jetter hose" and injured his back.

The Board denied petitioner's ADRB application in a written decision dated April 23, 2016, noting that although the 2006 "event occurred during and as a result of [his] regular or assigned duties," petitioner was not entitled to benefits because:  (1) he was "not totally and permanently disabled from the performance of [his] regular and assigned job duties"; (2) he was "not physically or mentally incapacitated from the performance of [his] usual or other duties

2

that [his] employer [wa]s willing to offer"; (3) "the event that caused [his] disability claim [wa]s not undesigned and unexpected"; and (4) he did not provide evidence that his failure to file his application for ADRB within the requisite five-year statutory limit was a result of "either delayed manifestation of [his] disability or . . . circumstances beyond [his] control."

Petitioner appealed, and the matter was transferred to the Office of the Administrative Law (OAL) for a hearing. An ALJ conducted a two-day hearing. Petitioner testified that he was employed as a "[s]ewer [r]epair[er]" for "[w]ell over [twenty] years," prior to working for six to eight months as a "[s]enior [m]aintenance [r]epair[er]." He explained that as a "[s]ewer [r]epair[er]" he was responsible for "check[ing] manhole[] lines, . . . [and] pump stations," lifting manhole covers that weighed between 150-200 pounds, and climbing up and down stairs into the manholes, approximately twenty-five feet in height.

Petitioner further testified he sustained numerous work-related injuries over his years of employment, which he had not referenced in his ADRB application. Specifically, he claimed that in 2005 he was involved in a motor vehicle accident when his work truck was rear-ended and he injured his neck, back, and knee. He was prescribed pain medication, attended weekly physical therapy, and returned to work after approximately three months. He explained

3

that, although he returned to work following the 2005 accident, he "wasn't the same person after being hit in the back."

According to petitioner, he experienced "problems with [his] back and . . . neck on and off" that "worsen[ed]" after sustaining another work-related injury on September 8, 2006. He explained that he was "using a high[-]pressured hose" to clean a dock, and while "holding the nozzle of the hose," the pressure from the hose resulted in his being "thrown" approximately thirty-five feet in the air, landing on concrete and injuring his back and neck. Petitioner admitted he returned to work and did not file an ADRB claim after this incident. He listed only this 2006 injury as the basis for his ADRB claim.

Petitioner also recounted injuring his neck and back as a result of another work-related accident in 2010 and undergoing surgery after injuring his knee and back in 2012 when he fell approximately four feet off a ladder. He was cleared to return to work in "full duty" capacity in March 2013.

Finally, petitioner testified that in May 2013, he suffered a work-related injury when his "hip . . . twisted and [he] fell [off a curb] and hit the side of [a] trashcan." He explained that, as a result, he experienced daily pain in his neck, "radiat[ing]" pain down his left arm, rendering him unable to "carry . . . more

4

than ten . . . or [fifteen] pounds," or walk more than "a block and a half." He took various medications to manage his pain.

Petitioner testified that following his 2013 injury, the City's Business Administrator advised he was not permitted to return to work. The City's medical examiner determined he could no longer perform the necessary and required functions of his job duties.

Petitioner presented testimony from Dr. David Weiss, a board-certified orthopedist, who reviewed petitioner's medical history and concluded that petitioner was "totally and permanently disabled based on his cumulative injuries" sustained during his employment. The doctor could not identify the precise incident that was the cause of his total and permanent disability, opining, "[I]t is really multiple traumatic events that have taken their toll on . . . [petitioner,] precluding him from doing his work."

Dr. Jeffrey Lakin, a board-certified orthopedic surgeon, testified on behalf of the Board and concluded petitioner was not permanently disabled as a result of the injuries he sustained in the 2006 accident. Dr. Lakin challenged Dr. Weiss's report, emphasizing that Dr. Weiss "focus[ed] on a lot of different body parts besides the back and a lot of different dates of accidents," despite petitioner's application having been confined to the September 2006 accident

5

resulting in back injuries. He explained that he conducted an independent medical examination of petitioner approximately two years after petitioner filed his application for ADRB and found "marked signs of non-organic or non-anatomic pathology to his spine," which he considered to be "symptom magnification, . . . malingering signs that don't make sense." Further, he testified petitioner "had no disability, he ha[d] some strength of his spine and his lower extremities," but "no signs of . . . objective radiculopathy."

The ALJ affirmed the Board's decision, denying petitioner's ADRB application. Although finding petitioner's injuries from the September 2006 accident "were the result of an unexpected happening," and, therefore, "undesigned and unexpected," the ALJ found the Board and Dr. Lakin "appropriately considered only the September 2006" accident in assessing petitioner's eligibility for ADRB. The ALJ determined "[p]etitioner was not totally and permanently disabled due to" the 2006 injury. The ALJ also concluded petitioner's 2013 application was untimely.

On June 28, 2019, the Board notified petitioner that it had considered petitioner's exceptions to the ALJ's decision, contending "that the ALJ failed to determine whether [petitioner wa]s eligible for an [ODRB]," and remanded the

6

matter to the OAL to allow the ALJ to determine whether petitioner was eligible for ODRB.

The parties subsequently participated in a "pre-hearing conference" and submitted briefs in support of their positions.  The ALJ issued a decision on March 3, 2020, incorporating its "findings of fact and conclusions" from its previous initial decision and noting that petitioner neither previously sought ODRB, nor amended his application to include a request for ODRB.  The ALJ thus questioned "whether [the OAL] ha[d] jurisdiction."

Nevertheless, having found petitioner only identified the September 2006 accident resulting in his back injury and considered both experts' conclusions that the 2006 accident did not "render petitioner totally and permanently disabled," the ALJ determined that "any injuries which . . . petitioner may have incurred subsequent to the September 2006[] accident were properly not considered in the Board's determination for ADRB and should not be considered for ODRB."  Thus, the ALJ "reaffirmed" the Board's decision denying petitioner's application for ADRB and denied petitioner's request for ODRB.

After consideration of petitioner's exceptions to the ALJ's March 2020 decision, the Board found the ALJ "focused solely on whether [petitioner] was rendered disabled as a direct result of the 2006 incident" when it decided

7

petitioner was not eligible for ODRB. The Board concluded "[t]he ALJ must . . . determine whether the conditions from which [petitioner] claimed to be disabled on his application were present at the time of his application and separation from employment." Therefore, the Board remanded the matter to the OAL "to allow the ALJ to issue recommended findings to determine whether [petitioner] is totally and permanently disabled and therefore eligible for an [ODRB]."

On September 22, 2023, the ALJ issued a third written decision, again denying petitioner's request for ODRB and reaffirming the denial of petitioner's request for ADRB. The ALJ incorporated its "factual discussion of the testimonial and documentary evidence, findings of fact and conclusions" from the two prior initial decisions, and determined that "at the time of filing and separation from employment," petitioner's "conditions from which [he] claimed to be disabled on his [a]pplication were present." However, the ALJ found that petitioner's claim for ODRB could not succeed as "petitioner was not physically or mentally incapacitated from the performance of duty at the time he terminated his employment . . . 'as a result of the disabling condition.'" The ALJ concluded that "[b]ased upon both Dr. Lakin's and Dr. Weiss's independent evaluations, the disabling condition identified by . . . petitioner on his [a]pplication, while

present, would not and did not, in and of itself, physically incapacitate" him from performing his job duties. On October 19, 2023, the Board adopted the ALJ's decision.

## II.

Petitioner appeals, contending the Board improperly denied his claim for benefits because the ALJ's decision considered only the September 2006 accident and did not consider his additional "work[-]related injuries." He concedes that his "permanent disability was caused by the cumulative effect of his injuries," but contends N.J.A.C. 17:2-6.7 "does not state or require that the disabling condition identified on the ADRB application must be the sole cause of the applicant's inability to work."

## III.

Our review of an administrative agency's final decision is limited. See In re Carter, 191 N.J. 474, 482 (2007). We afford "a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). Absent arbitrary, unreasonable, or capricious action, or a lack of support in the

A-0997-23

record, the agency's final decision will be sustained. See In re Herrmann, 192 N.J. 19, 27-28 (2007).

We defer to the Board's interpretation of the statutes it is charged with enforcing. See Thompson v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 449 N.J. Super. 478, 483 (App. Div. 2017). "A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Carter, 191 N.J. at 483). However, we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007) (quoting In re Taylor, 158 N.J. 644, 658 (1999)).

Under N.J.S.A. 43:15A-43(a), a member of PERS becomes eligible for ADRB if the "employee is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of [the employee's] regular or assigned duties."

In Richardson, the Court explained, that for a member of the pension system to establish they have suffered a "traumatic event" within the meaning of N.J.S.A. 43:15A-43, the member must demonstrate the following to qualify for ADRB:

1.    [T]hat [the member] is permanently and totally disabled;

2.    as a direct result of a traumatic event that is

    a.    identifiable as to time and place,

    b.    undesigned and unexpected, and

    c.    caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3.    that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4.    that the disability was not the result of the member's willful negligence; and

5.    that the member is mentally or physically incapacitated from performing his usual or any other duty.

[192 N.J. at 212-13.]

The five-part test "is an extraordinarily high threshold that culls out all minor injuries; all major injuries that have fully resolved; all partial or temporary disabilities; and all cases in which a member can continue to work in some other capacity." Id. at 195.

N.J.A.C. 17:2-6.7(a)(2) provides for ODRB:

(a) A member enrolled in the System before May 21, 2010, for whom an application for an accidental

11

disability retirement allowance has been filed, will be retired on an [ODRB] if the Board finds that:

. . . .

    2.    The member is physically or mentally incapacitated for the performance of duty at the time the member terminates employment <u>as a result of the disabling condition identified on the Accidental Disability retirement application</u> . . . .

[(Emphasis added).]

Viewing with deference the Board's decision under the plain and unambiguous language of the controlling law, we discern no abuse of discretion in the denial of benefits. The record amply supports the ALJ's findings, as adopted by the Board, that petitioner was not totally and permanently disabled as a result of the September 2006 accident and was not entitled to ADRB as a result of his untimely filing for the benefits. The expert testimony, and plaintiff's own assertions, clearly support that conclusion. The record similarly supported the ALJ's conclusion, adopted by the Board, that petitioner's application did not meet the standard for ODRB. That petitioner suffered other injuries, both prior to and in the aftermath of the 2006 accident, is inconsequential because petitioner failed to allege those incidents in his ADRB application as required by the plain language of N.J.A.C. 17:2-6.7(a)(2). Thus,

we conclude the Board's ineligibility determination was not arbitrary, capricious, or unreasonable.

To the extent not addressed, any of petitioner's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0997-23